## ROE *et ux.* v. FLEMING *et al.*

No. 1573.  Opinion Filed March 12, 1912.

(122 Pac. 496.)

1.  **BILLS AND NOTES—Transfer After Maturity—Defenses.** R. and wife, mortgagors, defaulted in the payment of one installment of the principal, together with interest and taxes. K., the mortgagee, agreed to extend the time of payment on the delinquent installment on condition that R. would make certain improvements on the mortgaged premises. R. promised to, and did in fact, make such improvements on the understanding with K. that he would forbear foreclosure proceedings, and wait until a definite future time for the payment of the delinquent installment. After the improvements had been made by R., the mortgagor, K., the mortgagee, transferred the mortgage and notes, including the past-due note, to F. who at once brought foreclosure proceedings on account of the delinquent installment, interest, and taxes. R. and wife answered, denying the right of F. to foreclose, and pleaded the agreement with K. to extend the time of payment. To this answer, F. demurred, which demurrer was sustained by the court. **Held:** (a) F. took the notes from K. subject to any defense which R. and wife had against them.

2.  **MORTGAGES—Payment—Extension of Time—Consideration.** The improvements made on the mortgaged premises by R., under the agreement with K., was a sufficient consideration for the extension of the time of payment of the installment, interest, and taxes, and said agreement, if made, should be enforced.

3.  **FRAUDS, STATUTE OF—Evidence—Extension of Time for Payment—Parol Evidence Affecting Writing.** An extension of time of payment of a note by the payee is not such a contract as need be in writing as being within the statute of frauds, nor does

proof of such agreement come within the rule which prohibits the admission of parol evidence which seeks to vary the terms of a written instrument.

4. MORTGAGES—Foreclosure—Pleading. The court erred in sustaining a demurrer to an answer which sets up such defense to a foreclosure proceeding.

(Syllabus by Robertson, C.)

*Error from Superior Court, Pottawatomie County; George Abernathy, Judge.*

Action by Lorena B. Fleming against P. B. Roe and wife and others. Judgment for plaintiff, and defendants J. B. Roe and wife bring error. Reversed and remanded, with instructions.

*Blakeney & Maxey,* for plaintiffs in error.

*J. W. Brooks,* for defendant in error Fleming.

Opinion by ROBERTSON, C. This suit originated in the superior court of Pottawatomie county on July 20, 1909, when the defendant in error, Lorena B. Fleming, filed her petition against the plaintiffs in error, and sought thereby to recover a judgment against them on 23 promissory notes, and to have a mortgage upon certain real estate described in plaintiff's petition foreclosed. The defendants in error, S. S. Carson and the Shawnee National Bank, were joined as codefendants, and in the prayer of plaintiff's petition it was asserted that said last-named defendants had or claimed some right, title, or interest in and to said property, but alleged that whatever interest they might have was subsequent, inferior, and junior to the plaintiff's mortgage lien, and asked for judgment against all of the defendants, foreclosing their equity of redemption in said property. The allegations of the petition show that on the 10th day of October, 1907, the plaintiff in error J. B. Roe made and delivered to one Thomas Kelley 25 promissory notes for the sum of $100 each, except the first which was in the sum of $50, each bearing interest at the rate of 6 per cent. per annum from the date thereof, payable semiannually; that the first and third of said notes were paid, but that at the time of filing said petition

23 remained unpaid, which amounted in the aggregate to $2,300 and interest. These notes were signed by J. B. Roe, but not by Ivy M. Roe. It further appears that Thomas Kelley, the original payee of said note, had indorsed each of them without recourse to the plaintiff, Lorena B. Fleming, and that she was the owner and holder and in possession of the same at the time the suit was filed. The petition further charges that at the time of the execution of said notes, and as a part of the same transaction and contract, and for the purpose of securing the payment thereof, the plaintiffs in error, J. B. Roe and Ivy M. Roe, husband and wife, made and executed unto the said Thomas Kelley a certain real estate mortgage on the property described; that the same was duly signed and acknowledged, and recorded in the office of the register of deeds of Pottawatomie county; that on June 18, 1909, Kelley assigned said mortgage to the plaintiff. Plaintiff further alleges that it was provided by the terms of the mortgage that if the sum, or sums, of money or any part thereof was not paid when the same was due, or if the taxes and assessments of every nature which might be levied on said premises were not paid when due, and if the insurance was not kept up on the building, then the whole of said sum, or sums, and interest thereon, should become due and payable without notice, and that the mortgagee or her assigns should be entitled to the possession of said property with the rents and profits. Plaintiff further charged that the conditions of said mortgage and notes had been broken, in that on October 10, 1908, there became due and payable according to the terms of the mortgage the sum of $100 on the second note and the interest on all said notes; that said note and the interest on the others had not been paid, although payment had been demanded; that defendant neglected to pay taxes on said property for the year 1907, amounting to $20. The plaintiff was obliged to pay the same to protect the property from a tax sale. Plaintiff further alleged that the defendants Roe and his wife were in possession of said property, and asked for a receiver, and that she have judgment for the entire sum, interest, and attorney's fee.

Thereafter, on August 21, 1909, plaintiffs in error filed an amended answer to said petition, which, after denying the allegations in the petition generally, denied that plaintiff was the real party in interest, charging that J. W. Brooks was the owner and holder of the notes, that he had furnished a consideration for the purchase of the same, and had said notes and mortgage indorsed and assigned to the plaintiff, but that plaintiff had paid no consideration, and had no interest whatever in said notes, but was merely the agent of Brooks, and that Brooks was the legal and equitable owner of the property. Plaintiffs in error further admit that they executed the notes and mortgages, but alleged that the plaintiff could not claim a right to claim a forfeiture, or to ask foreclosure, for the reason that the defendants had sold and delivered to Kelley, the plaintiff's vendor, material to the amount of $32.75 at the time when Kelley was the owner and holder of the notes, and it was agreed between them that the said amount should be credited on this indebtedness, without claiming any forfeiture from the plaintiffs in error by reason of the unpaid note and interest. Plaintiffs in error further allege in their amended answer that on April 10, 1909, all interest on said notes being due and unpaid, and the taxes and the note which became due October 10, 1908, still being unpaid, J. B. Roe, one of the plaintiffs in error, tendered to and paid the same to the said Kelley, and the said Kelley accepted the full payment of the said note for $100, which became due and payable, and had been paid, and that said Kelley at the time that he accepted the $100 payment on said third note made no demand on defendants, or either of them, for the immediate payment of the unpaid note, or the unpaid interest or taxes, and claimed no forfeiture from the plaintiff in error by reason of the pretended default, and that said Kelley at the time was the owner and holder of said notes and mortgage, and that said defendant J. B. Roe had agreed with the said Kelley at the time Kelley held and owned the said notes and mortgage that he, Roe, would paint and make other improvements upon the property covered by said mortgage, and that the note which was

due in October, 1908, might run until October 1, 1909, at which time defendant could pay the same, and the said Kelley would claim no forfeiture by reason thereof, and that thereupon, and relying upon said contract, and in consideration of said agreement, said plaintiff in error Roe did expend a considerable sum of money on improvements on said property, and which money he would have paid on the said note, except for the agreement aforesaid had with said Kelley, who was at the time of said agreement the owner and holder of said mortgage as aforesaid. To this amended answer the plaintiff filed a general demurrer.

The defendant, the Shawnee National Bank, and the defendant, S. S. Carson, filed an answer and cross-petition, asking to have subsequent mortgages foreclosed. On September 7, 1909, the court sustained the demurrer to the defendants' amended answer, and the plaintiffs in error, refusing to plead further, but electing to stand on said amended answer, were adjudged in default, and judgment was entered in favor of the plaintiff and against the defendants J. B. Roe and Ivy Roe, as prayed for. From this judgment Roe and his wife appealed, and present but one assignment of error for the consideration of this court, and that is that the court erred in sustaining a general demurrer to the amended answer of the plaintiffs in error.

The action in foreclosure was begun July 20, 1909. It is admitted by the pleadings that Kelley, the original payee of said note and mortgage, transferred the same to Lorena B. Fleming after the maturity of the second note. Therefore the defense as urged by Roe and his wife, if good as against Kelley, would necessarily be good as against Lorena B. Fleming. Roe and his wife in their amended answer allege that the first and third note have been paid, but admit that the second note, which became due October 10, 1908, also the interest for the year ending October 10, 1908, is unpaid, also that the interest for the half year ending April 10, 1909, is unpaid, and taxes to the amount of $20 are past due, but they contend that no other interest on said notes, and none of the other of said notes are

due and payable, and that plaintiff cannot lawfully claim the right to declare all of said notes due and to ask for foreclosure of the mortgage by reason of the above-named defaults for the following reasons: First, that prior to the date of the transfer of the notes and mortgage to Fleming by Kelley, and while Kelley was still the owner and holder of the same, the defendant Roe sold and delivered to said Kelley lumber of the value of $32.75, which sum Kelley agreed to credit on the indebtedness now alleged to be due, without claiming any forfeiture or penalty on the said second note and the said second year's interest and the said taxes being then due; second, that on April 10, 1909, all interest on said notes being due and unpaid up to date, and said taxes and the said note which became due on October 10, 1908, being still unpaid, the said J. B. Roe tendered, and the said Kelley accepted, the full payment of said note for $100, which became due April 10, 1909, and said Kelley then and there made no demand of these defendants, or either of them, for the immediate payment of said unpaid note, and said unpaid interest and taxes, and claimed no forfeiture by reason of said default in the payment of said note, interest, or taxes, and that said Kelley is still the owner of the notes and mortgage; third, that on the 1st day of May, 1909, the defendant J. B. Roe had a conversation with said Kelley, who was then and there the owner of said notes and mortgage, in which conversation said Roe stated to Kelley that he had some money, but he thought it better for the property covered by the mortgage that he should paint and make other necessary improvements on the same, and that, in case that he did make said improvements, he could not pay the amount overdue on said notes, interest, and taxes before October 1, 1909, but that he would make full settlement with Kelley by October 10, 1909, or, on failure so to do, would make to said Kelley a deed to said property covered by said mortgage; that at said time and place, and in said conversation, said Kelley consented that said defendant Roe might expend the money on improvements on said property, and expressed himself as satisfied with Roe's proposition to pay all

back interest, taxes, and other amounts due by October 10, 1909, as aforesaid, or to make the said Kelley a deed to said property on failure to so pay, and plaintiffs in error, relying on said conversation, and on the conduct of said Kelley, expended about $100 on said building for paint and other improvements.

*Nicholson v. Cinque,* 51 App. Div. 604, 64 N. Y. Supp. 191, was a case where Cinque made a mortgage to secure the payment to Flavell the sum of $1,200, $15 being payable on the 1st day of each month beginning with August 1, 1897. The action was begun September 21, 1898. The complainant alleged that the mortgagor had failed to comply with the conditions of the mortgage by omitting to pay a sum of $15 interest and installment of principal which became due and payable on the 1st day of each month between December 1, 1897, and September 1, 1898, inclusive, and that by reason of such default the plaintiff had elected to consider the entire principal, amounting to $1,072.27, to be due and payable. The plaintiff sued as the assignee of the mortgage. The mortgagor denied that any sum whatever was due upon the mortgage and alleged that plaintiff was not the real party in interest but merely the agent of Flavell, the mortgagee. He also set up two affirmative defenses, one of which was that Flavell on or about January 10, 1898, entered into an agreement with Guiseppe Cinque, extending the time for the payment of the principal, and waiving the interest upon the mortgage, until after the said Flavell had performed other certain agreements which he entered into with the said Guiseppe Cinque at the same time, that said agreement of extension was made for the benefit of Theresa Cinque, and that said Flavell had not performed the other contemporaneous agreement already mentioned. The court held that the legal effect of the agreement between Flavell and Cinque was to suspend, for the time being, all right to enforce payment of the installments and interest, payable by the terms of the mortgage, and also to entitle the mortgagor to have certain credits applied upon the mortgage, and held that Nicholson, the assignee of Flavell, was not entitled to maintain the action in foreclosure, but that the same

was prematurely instituted. This is a very strong case in support of the contention urged by the plaintiffs in error, and seems to be the established rule followed by the courts in cases wherein similar questions are involved. In *Faxton v. Faxton et al.,* 28 Mich. 158, it was said:

"A mortgagee of lands who had persuaded a son of the mortgagor, after the death of the latter, and when the land was of little value, and the son contemplated removal to another region, to remain on the farm and take care of it and support the family of his deceased father, upon a promise that the mortgages should never be enforced against the family, is estopped thereby, after the lapse of several years, during which such son had cultivated said farm and cared for the family, and the land had grown valuable under his tillage, from taking any steps to foreclose the mortgage."

The court further said:

"There is no rule more necessary to enforce good faith than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on. The rule does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he had induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect."

In the case at bar, it is not denied but that Kelley, the owner and holder of the notes and mortgage sued on, had a conversation with Roe, to the effect that Roe might use the money he then had in the improvement of the mortgaged property, and that Kelley by reason of such improvements being made would forbear foreclosure proceedings. The pleadings further show that in a certain conversation Roe agreed with Kelley that in case all past-due payments of principal, interest, and taxes were not met October 10, 1909, he would thereupon give Kelley a deed for the property. This last promise by Roe, of course, would be unenforceable, unless in writing. However, we need not concern ourselves with that phase of the question, for the reason that the making of the improvements on the premises was sufficient consideration for the forbearance on the part of Kelley. The action of Roe in spending the money which he had at the

time, and which he intended to apply upon the indebtedness, but which, with the consent and approval of Kelley, he used in the making of improvements on the property, was, without doubt, sufficient consideration 'in itself, and, if Kelley made such agreement with Roe, he must stand by it. There is no question in this case of attempting to vary the terms of a written instrument by parol evidence. Roe does not seek to change the terms of the notes and mortgage. It is simply a question of an extension of time of payment, and of which Kelley had entire control, and, if he was satisfied to grant the additional time for the consideration hereinabove alluded to, it was his own business.

We are of the opinion that the amended answer of Roe and his wife stated facts sufficient to constitute a defense and that the court erred in sustaining the demurrer interposed by the defendant in error, Lorena B. Fleming, and, having reached this conclusion, it necessarily follows that the judgment of the superior court of Pottawatomie county should be reversed, and the cause remanded, with instructions to overrule said demurrer, and for further proceedings not inconsistent with the views herein expressed.

By the Court: It is so ordered.