14941

COOK v. C. I. T. CORPORATION

(4 S. E. (2d), 801)

442

January, 1939.

*Messrs. Odom, Bostick & Taylor* and *Hemphill & Hemphill,* for appellant,

*Messrs. McDonald, Macaulay & McDonald,* for respondent,

October 4, 1939.

The opinion of the Court was delivered by Mr. G. B. Greene, Acting Associate Justice.

On October 16, 1937, George J. Mobley of Chester, S. C., purchased from J. W. Anderson Company, Inc., of Rock Hill, S. C., a Terraplane automobile at the time price of $1,050.24. For a "trade in" purchaser was allowed a credit of $300.00, leaving a balance of $750.24. For this balance Mobley, on the same day, executed to the seller his promissory note payable in twenty-four equal consecutive monthly installments of $31.26, on the like date of each month, the first payable one month after date of note. In order to secure said note Mobley and J. W. Anderson Company executed what is called a conditional sale contract, which in effect constituted a chattel mortgage over said automobile. The J. W. Anderson Company forthwith assigned and transferred said note and mortgage to appellant.

About a month after his purchase, Mobley and J. T. Cook, respondent herein, entered into an agreement for the purchase and sale of said automobile whereby respondent was to pay Mobley a fixed sum for his equity in the automobile and assume the payment of the balance due on the mortgage indebtedness. Pursuant to this agreement respondent and Mobley, on November 30, 1937, went to the office of J. W. Anderson Company and notified it of their trade and respondent paid to said company on said indebtedness the sum of $25.66. Thereafter, respondent made to J. W. Anderson Company the following payments: On January 1, 1938, $28.16; on February 1, 1938, $28.16; on March 1, 1938, $28.16; and on April 4, 1938, $28.16. All of these payments were in due course remitted by J. W. Anderson Company to appellant.

About thirty days after purchasing the car from Mobley, respondent allowed his son, Barney Cook, to take the automobile to the State of West Virginia and use it in connection with his business.

On January 20, 1938, after making the second payment, respondent had his attorney, Mr. David Hamilton, to write appellant a letter from which we quote:

"J. W. Anderson Company, Rock Hill, S. C., has acted as your agent in collecting two payments on the above account. The payments were collected of Mr. J. T. Cook, of this city, to whom Mr. Mobley sold the car with the consent of J. W. Anderson Company. The fact that you permitted J. W. Anderson Company to collect the money from Mr. Cook shows that J. W. Anderson Company was your agent in the transaction and said Company knew of, and by its act consented to, the transfer of the car from Mr. Mobley to Mr. Cook. You received the payments made by Mr. Cook to J. W. Anderson Company and, therefore, you approved J. W. Anderson Company as your agent.

"Mr. Cook has received a threat from one of your representatives that you intend to take the car in spite of the fact that no payments are in arrears. This is to advise you that Mr. Cook expects to make payments promptly when due and that you will be violating the law and your contract if you interfere with the enjoyment of the possession of said car by Mr. J. T. Cook, or by any member of his family, while there are no payments in arrears. I further wish to advise that if you commit any unlawful act in regard to this matter, I shall probably sue for punitive damages. You could make lots of money if just as soon as a borrower, or his assignee, made a few payments on the mortgage debt, you were permitted to take the car and appropriate it to your own use. Please, therefore, bear in mind that Mr. Cook expects to make payments promptly as they become due and that he and anyone of his family who has possession of the

car will be badly damaged should you breach the contract by unlawfully taking possession of the car, or attempting to embarrass Mr. Cook or any member of his family.

"If you do not want Mr. Cook to make payments to J. W. Anderson Company as your agent, let him know and he will forward payments direct to you."

No reply was made to this letter, either to respondent or to Mr. Hamilton. In fact no communication was ever had by appellant with respondent before the automobile was seized on the streets of Princeton, West Virginia, on April 5, 1938. We now quote from the statement contained in the Transcript of Record in this case:

"This action seeks damages for the alleged conversion by the defendant of the equity of plaintiff in an automobile described in the Complaint. The Complaint alleges in substance that the plaintiff purchased the car from one Mobley, who had theretofore given the defendant a chattel mortgage on same, and assumed and agreed to pay the installments called for thereunder. The Complaint further alleges that plaintiff did pay thereafter all of the payments, but that nevertheless the defendant unlawfully seized and converted to its own use the car in question while it was in the possession and custody of plaintiff's son in the State of West Virginia, and that plaintiff was thereby damaged in the sum of $3,000.00.

"The Answer of defendant is a denial of the material allegations of the Complaint, except that the defendant admits seizing the car and retaining possession thereof.

"The cause was tried before the Hon. T. S. Sease, Circuit Judge, and a jury at the January term of the Court of Common Pleas for Chester County, 6th., Judicial Circuit, and resulted in a verdict for plaintiff of $400.00 actual and $1,600.00 punitive damages. Motion for new trial was made, heard, and refused, and order overruling motion for nonsuit, directed verdict and new trial filed January 27, 1939,

and due notice of appeal to this Court given by defendant. The plaintiff does not appeal."

Exceptions for appeal are numerous, but according to appellant's brief present seven questions. Before entering upon a discussion of these questions, we call attention to some legal principles applicable in this case and upon which the answers to a number of those questions depend.

After his purchase of the automobile from Mobley respondent made five payments on the mortgage debt to J. W. Anderson Company, and these payments were in due course remitted to appellant with remittance advices which showed that respondent had purchased the automobile, and that said payments were being made by him. In view of these admitted facts the J. W. Anderson Company was the agent of appellant for the collection of this mortgage indebtedness. *Mortgage & Acceptance Corp. v. Stewart,* 142 S. C., 375, 140 S. E., 804.

Again, appellant, having been fully advised that respondent had purchased the automobile from Mobley and assumed the payment of the mortgage debt and through its agent having collected and retained five payments on the mortgage indebtedness, cannot now be heard to say that that it did not extend credit to respondent. However, this question was submitted to the jury, who by their verdict found that such credit had been extended. Having purchased the automobile from Mobley and credit with respect to the mortgage indebtedness having been extended to him by appellant, respondent had the right to the possession of the mortgaged property until some condition of the mortgage was broken.

We come now to the consideration of the questions presented by the appellant. At the time of the seizure of the automobile, was there such default in the payment of the mortgage indebtedness as would entitle appellant to declare a default and take possession of the mortgaged property? As stated above, the note provided for

monthly payments of $31.26, beginning on November 16, 1937. By its terms five installments had become due at the time appellant took possession of the automobile. The evidence showed that before the seizure respondent had made five payments as above set forth. These payments and the dates of same were not exactly according to the terms of the note. However, the undisputed evidence shows and the jury by its verdict necessarily found that respondent, not having had the opportunity of seeing the note and mortgage or a copy thereof, paid the entire amount that appellant's agent, J. W. Anderson Company, told him was due thereon, the last payment having been made before the seizure of the automobile. Appellant admits that it never at any time advised respondent of the error made by its agent or gave him an opportunity to pay the correct amount then due. On the day after the automobile was taken appellant refused to allow respondent to pay the difference between the amount already paid and that provided for in the note. In these circumstances we hold that appellant was estopped from declaring a default and from taking possession of the automobile on that ground.

Had appellant the right to repossess the automobile by reason of the fact that respondent had allowed his son to take it to West Virginia and use it in his business? It is the law of this State that the right of possession is personal to a mortgagor and may be forfeited by him if he should sell the mortgaged property or otherwise dispose of its possession. In appellant's brief we find the following: "In passing, we wish to state that we do not undertake to argue that a chattel mortgagor cannot under any circumstances permit the chattel to get out of his possession. A casual loan of the property, for example, for a short time would not subject the property to repossession, of course."

There was testimony tending to show that the permission to take and use the automobile was only temporary and that respondent had in no wise parted

with the permanent possession thereof. It was for the jury to say. whether the circumstances were such as to constitute a forfeiture of the right of possession. The verdict speaks for itself.

Did appellant have the right to repossess the automobile when respondent permitted it to be taken from this State where the mortgage was executed into another state? In the case of *Hill v. Winnsboro Granite Corp.*, 112 S. C., 243, 99 S. E., 836, 838, the Court said: "The necessary effect of such a removal is to increase the opportunities of the mortgagor to defeat the lien. Furthermore, if it should become necessary for the mortgagee to resort to the remedies provided by law for the enforcement of his rights, they would be impaired by reason of the necessity of resorting to another jurisdiction. If it was the intention of the plaintiff to make his permanent home in Georgia, our conclusion is that he did not have the right to remove the property without the consent of the mortgagee."

In the case just mentioned the Court was speaking of a *permanent* removal from the State. There is testimony in the instant case to show that the removal of the automobile into another state was only temporary and it cannot be said, as a matter of law, that such removal had the necessary effect of defeating the mortgage lien or of impairing appellant's security. That question was properly submitted to the jury by the trial Judge.

May the holder of a mortgage containing any "insecurity clause" repossess the mortgaged property as a matter of arbitrary right? If not, does the evidence in this case show conclusively that appellant acted in good faith and upon good and sufficient reasons in repossessing the mortgaged property under that clause? The clause referred to reads as follows: " * * * if the holder hereof (the contract) shall deem itself insecure, the full amount hereunder, including any note given, shall without notice become due and payable forthwith. Purchaser agrees in any

such case to deliver the property to the holder and the holder may, without any previous notice or demand for performance and without legal process, enter any premises where the property may be found and take possession thereof, etc."

In American Jurisprudence, Volume 10, page 870, Section 235, we find the following: "In some jurisdictions a provision in the mortgage that the mortgagee may take possession of the chattels and foreclose whenever he deems himself insecure confers on him an arbitrary right which he may exercise without showing or having any reasonable ground for deeming himself insecure; whereas in other jurisdictions it is required that such right shall be exercised in good faith, based upon such reasonable apprehension of danger as would cause a reasonable man to act. The mortgagee will not be required to show that there is actual danger of his security being impaired, but that he has such grounds as a reasonable man might in good faith act upon, and he is not protected if he acted from malicious motives. Circumstances such as the absconding of a mortgagor, and leaving the property unprotected, the seizure of the chattels on a distress warrant against the mortgagor, the sale by the mortgagor of part of the encumbered property, or partial destruction or consumption of the property by the mortgagor have been enumerated as affording reasonable grounds for the mortgagee's taking advantage of the insecurity clause; and the question of his good faith is for the jury."

We hold that the clause under consideration did not confer upon appellant an arbitrary right, but that in the exercise of its right thereunder it must act in good faith and upon such reasonable apprehension of danger as would cause a reasonable man to act. To hold otherwise would open the door to oppression and thereby be inconsistent with the policy of the law. We cannot say that the evidence shows conclusively that appellant acted in good faith in repossessing the automobile under the clause mentioned. That issue was properly submitted to the jury.

Appellant's fifth question is: "Can a chattel mortgagor maintain an action in conversion against a chattel mortgagee who has repossessed the chattel in accordance with terms of the mortgage, but who has not sold or disposed of same, or is the mortgagor required to first exhaust his remedy by seeking a redemption or accounting." It will be observed that the question assumes that the mortgagee has repossessed the chattel in accordance with the terms of the mortgage. If that were true in this case, then respondent would be required first to seek a redemption or accounting. The trial Judge so charged the jury. But the jury found that the seizure of the automobile was unlawful and there was ample evidence upon which to base that finding.

The sixth question, according to appellant's brief, presents "four distinct sub-issues," which will be considered in the order named.

"'(a) Did the trial Judge err: In his admission of statements and conversations with an alleged agent; by his comments before the jury upon the facts of the alleged agency; and in his charge to the jury on the issue of the alleged agency?"

The principle of law with respect to agency announced in the beginning and the conclusion reached in passing upon appellant's first question fully dispose of this question in all its phases.

"(b) Did the trial Judge err in his admission of and comments upon the Hamilton letter, Exhibit 'J'?"

The letter referred to was written on January 20, 1938. The first and last paragraphs of the letter served to put appellant on notice that respondent was dealing with J. W. Anderson Company as its agent and that consent had been given to the transfer of the automobile from Mobley to respondent. The second paragraph of the letter was a notice or warning to appellant that if it seized the automobile when there had been no default, an action for punitive dam-

ages would probably be instituted. The letter was clearly admissible and the comments of the trial Judge were in no wise prejudicial.

"(c) Did the trial Judge err in refusing to admit in evidence Appellant's Exhibit: For Identification No. 100?"

The proposed exhibit was a letter written by appellant to Chitty Chevrolet Company, Chester, S. C., on December 1, 1937, asking for confidential information as to respondent as a credit risk. The reply, written on the foot of the letter, was: "Haven't sold him lately; about 4 years. Sold him several times, but all very unsatisfactory." With that letter before it appellant extended credit to respondent, and its attempt later to use it in patching up its claim of "feeling itself insecure" naturally did not appeal to the trial Judge. However, appellant cannot complain for the reason that the writer had already testified in substance that he had made inquiry from said company as to the past "record credit" of respondent and had been informed that it was unsatisfactory.

At the conclusion of his general charge to the jury the trial Judge, at the request of counsel for respondent, charged the jury as follows:

"Mr. McDonald: Could I ask your Honor to charge this proposition, that the owner of the property, in the absence of some agreement to the contrary, is entitled to immediate possession—the owner of the property, in the absence of some contract, is entitled to the possession of it.

"The Court: The owner—I charge you that, gentlemen. I had not thought about it, but that is a sound proposition."

The jury had already been charged fully and clearly as to appellant's right as mortgagee to repossess the property upon the breach of any condition of the mortgage. The charge complained of can in no sense be considered prejudicial to appellant.

Finally, was there evidence sufficient to support a verdict for punitive damages? The jury found that the automobile was wrongfully taken by appellant. Respondent had notified appellant that a wrongful taking thereof would result in an action for punitive damages. Appellant never at any time communicated with respondent or made any serious effort to do so. Respondent made his last payment on April 4th, and in the afternoon of the following day appellant's agent, J. L. Jackson, found the automobile on the streets of Princeton, West Virginia. He did not seize the property then, but waited until nearly midnight and then went by stealth, as it were, hoisted the rear end of the locked automobile by means of a "wrecker truck" and carried it away. Jackson testified that he made no attempt to get in touch with respondent's son, Barney Cook, who he knew was in charge of the automobile and staying at a nearby hotel. The evidence tends to show that appellant acted with a conscious indifference to the rights of respondent and in reckless disregard thereof.

All of appellant's exceptions have been carefully considered and are overruled.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.