15656

PARKER v. GENERAL MOTORS ACCEPTANCE CORP.

(30 S. E. (2d), 589)

548

January, 1944.

*Mr. Heyward Brockinton* and *Messrs. Nelson, Mullins & Grier,* all of Columbia, S. C., Counsel for Appellant,

*Mr. C. T. Graydon, Mr. T. P. Taylor,* and *Mr. F. Ehrlich Thomson,* all of Columbia, S. C., Counsel for Respondent,

June 12, 1944.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court:

Respondent, Jack Parker, brought this action against appellant, General Motors Acceptance Corporation, to recover actual and punitive damages on account of an alleged conversion by appellant of a Chevrolet automobile. At appropriate stages of the trial, appellant duly made motions for a nonsuit and a directed verdict. Both motions were refused by the trial Judge and the case was submitted to the jury, resulting in a verdict favorable to respondent for both actual

and punitive damages. The sole question raised is whether the trial Judge erred in refusing these motions.

On October 7, 1940, respondent purchased from the J & OK Chevrolet Company of Columbia, South Carolina, by whom he was employed as a mechanic, a 1936 used Chevrolet sedan automobile for $464.40. (The cash price was $367.00, the difference between this and the time price representing insurance and "carrying charges"). Respondent paid the sum of $78.00 at the time of the sale and to secure the deferred balance of $386.40, executed, along with his wife, a conditional sale contract. On the same day the seller sold and assigned this contract to appellant. The contract is somewhat ambiguous as to whether the deferred balance was to be paid in weekly or monthly installments. Both appellant and respondent construed the contract in the pleadings as payable in certain monthly installments. Adopting their construction, the contract provided for monthly installments at the rate of $35.00 per month for the first two months and thereafter at the rate of $22.60 per month, payable on the 21st day of each month, commencing November, 1940. The contract contained a stipulation that the purchaser "shall not transfer any interest in this contract or said property." It also empowered the holder to take immediate possession of the automobile upon default by the purchaser in complying with any of the terms of the contract. Appellant repossessed the automobile on June 23, 1941, contending that respondent had defaulted in the payment of one installment and had disposed of the automobile contrary to the above provision. Respondent denied that he was in default in paying the installments, contending there was an agreement whereby all monthly payments were advanced one month, and denied that he had disposed of the car. Under the well-settled rule, the evidence bearing on these contentions must be considered in the light most favorable to respondent.

Prior to June, 1941, all collections on the contract were handled by the employees of the Chevrolet Company, who

treated the contract as calling for weekly installments and collected from respondent on that basis. The collections so made were remitted by the Chevrolet Company to appellant. The weekly payments were made in irregular amounts, but it appears that any deficiency in a weekly installment was made up in subsequent payments. It further appears that it became necessary to make some repairs on the car and respondent testified that in April or May, 1941, while his installments were not in arrears, he discussed this with a Mr. Arant, who was credit manager of the Chevrolet Company, stating that he was unable to make the necessary repairs and keep the installments on the contract current, and as a result, it was agreed between them that the monthly payments were to be advanced one month. Arant, who was a witness for appellant, admitted that he told respondent that he could "skip" a weekly payment, but denied giving permission to "skip" a monthly payment, stating that he was without authority to grant such permission without payment of an extension charge. It was Arant's recollection that this incident occurred in December, 1940.

The first contact or communication which respondent had with any admitted agent or representative of appellant was on Saturday morning, June 21, 1941. According to respondent's testimony, a Mr. Clark, representing appellant, called on him at that time claiming that he was in arrears on the payment due May 21, 1941. He said that he advised Clark of the extension agreement he had with Arant, under which the May 21st installment was due that day and the June 21st installment would not become due until July 21, 1941, and Clark stated that this arrangement made with Arant was satisfactory. Respondent further testified that he told Clark that he had not been "paid off yet" and to come back that afternoon; that Clark did not come back, but called at his home on the next day, Sunday, when he was away. Respondent's next conversation with Clark was on the following Monday morning and it is undisputed that on this

occasion he paid to Clark the sum of $22.60. It further appears that about this time, or shortly prior thereto, respondent had some negotiations with a Mr. Cook whereby respondent was to sell the Chevrolet car to Cook in consideration of the payment of $50.00, the assumption by Cook of the unpaid installments due to appellant, and delivery by Cook of a 1934 Plymouth automobile. According to the testimony of respondent and Cook, these negotiations had not assumed final form because of the necessity of ascertaining whether appellant would be agreeable to this transfer. Because of these negotiations, respondent testified that after he paid Clark the sum of $22.60, both he and Clark went to see Cook. Cook was busy at the time and requested the parties to take the matter up further late that afternoon.

A further conference was had between respondent, Cook and Clark about six o'clock that Monday afternoon. Cook testified that at this conference he advised Clark that he would like to go through with the trade; that Clark stated that he would have to pay a transfer fee of $10.00 before the transfer could be made; and that he told Clark he did not have the money with him and would bring it the next morning, but Clark said that he could not wait. On this occasion the car was taken by Clark. According to respondent's testimony, when the negotiations for the sale of the car to Cook resulted unsuccessfully, Clark wanted to take the car. He says he protested, reminding Clark that under the extension agreement he was not in default, but Clark ignored his protests and took the car.

Clark's testimony as to what transpired at these conferences contradicts in many particulars that of Cook and respondent. He denied ratifying any extension agreement which respondent had with Arant, but said that respondent asked him for an extension, to which he replied that if respondent paid the installment due May 21st, appellant would consider extending it, but he could not grant the extension without the approval of appellant's office. According to his

contention, the May 21st installment was past due and the next installment was due that day. Clark admitted that respondent told him on Saturday morning that he could not make a payment until that evening, and said that at the request of respondent, he called at respondent's home on Sunday morning; that respondent was not at home; and that he talked to respondent's wife, who advised him that respondent had traded the car to Cook. He further testified that in the conversation on Monday morning, he advised respondent of his information that the car had been disposed of to Cook and respondent replied that he had traded with Cook, but had not had time to make the transfer. At the suggestion of respondent, both went to see Cook who was busy and all agreed to meet late that afternoon. Clark further testified that at the conference of the three late Monday afternoon, he informed Cook that in order to transfer the car, it would be necessary for Cook to pay the June 21st installment and a transfer fee of $10.00; that Cook said he was unable to do this; that he then offered to store the car for a reasonable length of time to afford Cook an opportunity of raising the necessary funds; that Cook was unwilling to do this and advised him that the car was Parker's; and that he thereupon made demand on respondent for the outstanding balance, which respondent said he was unable to pay. According to Clark's version, respondent then consented for him to take the car upon his giving respondent permission to remove the spotlight. Upon being asked whether he seized the car on account of the installments being in default or because the car had been traded, Clark testified that the car was seized for both reasons.

It is undisputed that on June 24, 1941, the day after the car was repossessed, C. T. Graydon, Esq., one of respondent's attorneys, wrote the appellant, stating that because of the extension agreement the car was repossessed when respondent was not in default, and demanding that the car be returned to respondent. One of appellant's attorneys

replied to this letter on June 27th, stating that he would like to discuss this matter with Mr. Graydon before any further action was taken. Notwithstanding this correspondence, on June 30th the car was advertised for sale. This action was commenced on July 7, 1941. The car was sold at public auction on July 21st and bid in by appellant. At the time the car was repossessed, respondent had made payments aggregating $183.00, leaving a balance unpaid of $203.40. Some time after the sale the Chevrolet Co., who originally sold the car, paid to appellant the unpaid balance less some adjustments, and presumably received the car.

The right of appellant to a nonsuit, or a directed verdict, as to actual damages depends upon whether there is any evidence reasonably tending to show that the car was unlawfully taken from respondent. Appellant contends that it committed no wrongful act in repossessing the car because the evidence conclusively shows (1) that respondent was in default with his monthly installments, (2) that respondent had disposed of the car in violation of the terms of the contract, and (3) that respondent voluntarily surrendered possession of the car. We shall discuss these grounds in the order stated.

The question of default in the monthly installments depends upon whether the time of payment was extended, for it appears to be conceded that under the terms of the contract the installment of June 21st was delinquent when the car was repossessed on June 23rd. We think there was ample evidence from which the jury could infer that there was an agreement to postpone all monthly payments for a period of one month. Appellant contends that Arant and Clark were without authority to grant the extension, on the theory that one authorized to receive payment of an obligation is not thereby empowered to extend the time of payment. According to Arant's own testimony, his authority extended beyond that of receiving payments. He said he was empowered to extend payment for one week

and upon payment of an extension charge, to grant a month's extension. The evidence does not disclose in what capacity Clark was employed by appellant. He is characterized in appellant's brief as its "branch representative." But we do not find it necessary to pass upon the merits of this contention, as there are no exceptions raising this question. Nor was the authority of Clark to grant or ratify an extension questioned in the lower Court. While the testimony of respondent relating to an extension granted by Arant was objected to on the ground that Arant had no such authority, respondent's testimony as to ratification of this extension by Clark was not objected to, nor was the question otherwise raised in the lower Court.

Appellant further contends that there was no consideration for the alleged extension agreement. There is testimony tending to show that the extension was granted on the strength of the statement by respondent that he was going to make extensive repairs on the car and that respondent, relying on the extension, made such repairs. We do not think the question of consideration for the alleged extension presents any difficulty. The benefit accruing to appellant by reason of the enhancement in the value of its security was a sufficient consideration for the extension agreement. The same question was passed upon by the Supreme Court of Oklahoma in *Roe et ux. v. Fleming et al.*, 32 Okl., 259, 122 P., 496, where it was held that improvements made on the mortgaged premises by the mortgagor constituted a sufficient consideration for the extension of time of payment of the mortgage indebtedness. In *Bradley v. Glenmary Co.*, 64 N. J. Eq., 77, 53 A., 49, it was held that a reduction by the mortgagor of the amount due on the first mortgage was a sufficient consideration to support an agreement by the second mortgagee to extend the time of payment of his mortgage, on the theory that a reduction in the amount due on the first mortgage was a direct benefit to the

second mortgagee. Also see 41 C. J., 808 and 12 American Jurisprudence, 994.

It follows that the trial Judge committed no error in submitting to the jury the question of whether the respondent's monthly installment was in arrears at the time the car was taken.

We also think the question of whether respondent had transferred the automobile to a third party without the consent of appellant, in violation of the terms of the contract, was properly submitted to the jury. Both respondent and Cook are explicit in their testimony that the proposed trade was contingent on securing the consent of appellant to the transfer, and owing to their inability to secure such consent, the deal was never consummated. Clark testified that just before the car was taken, Cook said the car belonged to respondent which clearly indicated that the trade was not going through. To hold that mere preliminary negotiations for a transfer or sale of the property constituted a violation of this provision of the contract would be an unreasonable and unwarranted construction. There is nothing in the record to show that respondent was trying to make a secret disposal of the automobile. On the contrary, it was he who suggested to Clark on Monday morning that they contact Cook with reference to making arrangements for the transfer.

Appellant next contends that the only reasonable inference to be drawn from the testimony is that respondent voluntarily surrendered possession of the car to appellant. Respondent testified several times that he did not consent to the repossession; that he insisted that Clark had no right to take the car; and that he protested his doing so. It is true that at one point on cross examination respondent stated that he consented to the repossession, but a reading of the entire cross examination shows that this statement could be reasonably interpreted as meaning

that respondent did not undertake to use force to prevent the seizure and made no further protests after he concluded that Clark was determined to take the car and that further protest on his part would be futile. In any event, it was clearly a question for the jury, in view of the conflicting evidence, as to whether respondent gave Clark permission to take the car. In view of respondent's equity in the car, his contention that his installments were not in arrears, his payment of a monthly installment during the morning of that day, it would be rather unreasonable to suppose that he would give permission that afternoon to take the car.

The foregoing discussion disposes of all exceptions complaining of error in submitting to the jury the question of actual damages. The remaining question is whether the trial Judge should have directed a verdict for defendant as to punitive damages. Appellant contends that the only reasonable inference to be drawn from the testimony is that it "acted in good faith in the furtherance of a reasonably supposed right," and that there is no evidence of a reckless or conscious disregard of the rights of respondent so as to warrant the right to punitive damages.

It is well settled that if appellant was acting in good faith and repossessed the car in the assertion of a reasonably supposed legal right, there would be no basis for punitive damages; but if appellant acted with a conscious indifference to, or in reckless disregard of, respondent's rights, an undoubted case is presented for punitive damages. *Gwynn v. Citizens' Telephone Co.,* 69 S. C., 434, 48 S. E., 460, 67 L. R. A., 111, 104 Am. St. Rep., 819; *Jordan v. Equitable Life Assurance Society,* 170 S. C., 19, 169 S. E., 673; *Cox v. Coleman et al.,* 189 S. C., 218, 200 S. E., 762; and *Cook v. C. I. T. Corporation,* 191 S. C., 440, 4 S. E. (2d), 801, 125 A. L. R., 306.

We think there is evidence, if believed by the jury, to warrant the inference of more than simple negligence or a technical conversion and to show a reckless

disregard of the rights of respondent. If we accept as true the testimony of respondent, the car was seized by Clark after he had ratified the extension agreement made by Arant and collected on the morning of the same day an installment of $22.60 from respondent, and after he should have known from statements by both Cook and respondent that the proposed sale did not materialize. Moreover, the car was advertised for sale after appellant was notified by respondent's counsel to return the car because it was unlawfully repossessed and appellant's attorney had written respondent's attorney requesting a conference. Appellant offers no explanation whatsoever of the advertising of the car for sale while the attorneys for both parties were about to arrange a conference, probably looking to some amicable adjustment. Respondent and his counsel were not notified of the proposed sale, and neither knew of it until after it had taken place. We see no error in refusing the motion for directed verdict as to punitive damages. *Cook v. C. I. T. Corporation, supra*; *Young v. Corbitt Motor Truck Co.,* 148 S. C., 511, 146 S. E., 534.

While the case of *General Motors Acceptance Corporation v. Johnston,* Tex. Civ. App., 104 S. W. (2d), 125, tends in many respects to support the contention of appellant as to punitive damages, we do not think it is in line with our own decisions on the question of punitive damages.

All exceptions are overruled and judgment affirmed.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne, Stukes and Taylor concur.