16579

RICHARDSON v. GENERAL MOTORS ACCEPTANCE CORP.
(68 S. E. (2d) 874)

*Messrs, J. Davis Kerr,* of Spartanburg, *and Cooper & Gary,* of Columbia, *for Appellant,* cite:

*Mr. W. Hummel Harley,* of Laurens, *for Respondent,* cites :

January 9, 1952.

STUKES, Justice.

In this action for conversion of a Buick automobile respondent, as plaintiff, recovered verdict for $300.00 actual and $1,500.00 punitive damages, and from the judgment thereupon the defendent appealed.

Respondent is a Negro domestic servant and at the time of the trial was cooking at a Clinton hotel. She purchased the used car on December 21, 1949, from Smith Motor Company of Laurens for the total time price of $1,737.36, of which $540.00 was paid at the time. The deferred balance of $1,197.36 was payable $66.52 on the 21st day of each succeeding month until paid; and the usual conditional sales contract or chattel mortgage was executed and delivered to the Motor Company which assigned it for value to appellant and guaranteed the payment.

Respondent met the first two monthly payments and then fell into arrears. According to her testimony she was visited by a representative of appellant, a Mr. Nash, on April 24, 1950, and she paid him $70.00, his receipt for which was in evidence. It specified that it was applied $66.52 to principal, which was the March payment, and $3.48 to a collection charge. She testified unequivocally that Mr. Nash agreed that she should have one month from that day to make another payment. Nash testified conflictingly which made an issue for the jury and their verdict indicates that they resolved it favorably to respondent.

On May 17, 1950, another representative of appellant, whom respondent mistakenly identified in court as the same Mr. Nash, called with a colored man and demanded payment or possession of the car. Respondent protested that it was not time for another payment according to the extension which had been granted to her. She testified that he said one of the Smith brothers instructed him to get the money or the car and that she surrendered possession by giving him the keys because, quoting, "I wasn't going to

get into no confusement with him, I didn't want to come in contact with him." This because, she said, he was a white man. She further testified that they had an argument and she refused to sign a paper which he brought, which latter this representative corroborated in testimony by saying that she refused to sign, quoting, "the surrender form." Respondent was told that the car would be stored at Smith Motor Company and put on sale from which she would get, quoting from her testimony "some partial out of it." The colored man who had accompanied appellant's representative then got in the car and drove it away. Respondent afterward went to the Motor Company where she saw the car on the sale lot and it was being offered for sale but she heard nothing more and afterward consulted the attorney who later brought this action. He addressed two successive letters to appellant asking for public sale and accounting but received no answer to either.

A colored preacher testified for respondent that he saw the car after repossession on the sale lot of Smith Motor Company and it was priced, quoting him, "somewhere in the teens."

The version of Nash in his testimony for appellant was that when he interviewed respondent on April 24 and collected $70.00 he understood the resulting extension of time for further payment to be until May 15, not until May 24, as contended by respondent and as evidently believed by the jury. A Mr. Smith, not of the Motor Company but a representative of appellant, testified that it was he who took possession of the car but he said that it was on May 23rd instead of May 17th as was insisted by respondent. Both dates fell before expiration of the extension as contended for by respondent in her complaint and testimony. This representative of appellant testified that respondent did not protest his demand for possession and voluntarily gave him the keys but he admitted that she refused to sign the surrender form which he had for her execution.

A member of the firm of Smith Motor Company was also offered as a witness by appellant but he did not fix the date of repossession. His Company made needed repairs to the car of $69.00 and thereafter sold it about June 3rd to a used car dealer in Greenville for $925.00 which he testified was its fair value. He admitted, however, that he had priced the car to respondent's preacher-witness at $1,295.00. If the car had been sold at public sale and brought less than the mortgage debt, Smith Motor Company would have had to pay the deficit the same as if sold privately, as it was.

Appellant has briefed three questions as follows:

1. Was it error to submit question of an extension of time to jury when there was no evidence of consideration for such extension, no evidence that extension was in writing as required by contract, no evidence of agent's authority to modify contract and no evidence of waiver by defendant?

2. There being no evidence of malice, willfullness, intimidation or oppression in the repossession and sale, should the Court have submitted the question of punitive damages to the jury?

3. Was the verdict excessive?

The first question, which was omitted but expressly not abandoned in oral argument, is composed of issues which were not raised by the pleadings and, therefore, were not decided by the trial court. They cannot be raised for the first time on appeal. Applicable is the following from the opinion in the recent case of *Franklin Savings & Loan Co. v. Riddle,* 216 S. C. 367, 374, 57 S. E. (2d) 910, 913: "This ground of appeal is not responsive to the issues raised by the pleadings, nor does it appear to have been presented to or passed upon by the trial judge; and therefore is not properly before this Court. *Prosser v. Avery Lumber Co.,* 162 S. C. 159 [160], 160 S. E. 431."

The vital issues made by the complaint, answer and evidence were, first, whether the extension expired on May 15, as contended by appellant, or May 24, not

whether there was an extension; and, if May 24, whether the repossession was accomplished against the will of respondent or with her consent. There was ample evidence to sustain the verdict of the jury which concluded these factual issues against the contentions of appellant; and they were submitted upon clear and appropriate instruction by the Court. If appellant conceived error in the statement of the issues at that time, its duty was to raise the question or questions then and not await appeal from adverse verdict and judgment. "It is well established by numerous decisions of this court that any error on the part of the trial judge in the statement of the issues will be deemed waived if counsel fail to bring it to his attention." Per Lide, A. A. J., in *Coleman v. Lurey,* 199 S. C. 442, 20 S. E. (2d) 65, 66. There is, therefore, no occasion to further discuss appellant's purported first question.

Turning to the second question, the assumptions of fact which it contains are unwarranted as is seen by the foregoing summary of the evidence. Submission to the jury of the issue of punitive damages was justified on the record by the authority of the leading case of *Parker v. General Motors Acceptance Corporation* (the identical appellant here), 204 S. C. 547, 30 S. E. (2d) 589, 591, 153 A. L. R. 763, and the similar decisions from other jurisdictions which are reviewed in the annotation which begins at page 769 of 153 A. L. R. The facts of the *Parker case* and that in hand are very similar and the award of actual and punitive damages there was affirmed, as it is here. It was said in the opinion in that case, which may with equal pertinency be repeated here: "He says he protested (the repossession interpolated), reminding Clark that under the extension agreement he was not in default, but Clark ignored his protests and took the car." There need, of course, not be physically forceful resistance to a wrongful repossession in order to make it illegal. Here the difference in sex and social status between respondent and appellant's representative, which the jury doubtless considered, and the

argument and refusal of respondent to sign the repossession agreement or surrender form which was sought, were entirely adequate to support the conclusion, implicit in the verdict, that appellant's representative had ample notice of respondent's right which he willfully invaded. It is not as strong a case on the facts as can be supposed or as can be found in the books, but we nevertheless think it clearly sufficient to warrant the verdict for punitive damages and bring it within the rule of the *Parker case*.

The third question, which relates to the amount of the verdict, is also without merit. The award of $300.00 actual damages is well supported by the evidence. Only about five months elapsed between the time of the sale of the Buick car to respondent for $1,737.36, including interest and insurance, and the seizure and private sale of it by appellant. The sale for $925.00 after repossession was to a dealer, which may therefore be said to have been at wholesale. At that time the balance owing by respondent was about $1,-000.00. Her witness said that the car was offered to him after repossession for a price in the teens, and appellant's witness, Smith of Smith Motors, said that he offered it for $1,295.00. It is apparent that the amount of the verdict for actual damages represented a rather close estimate of the value of respondent's equity in the car, that is the actual value of it above her indebtedness, after full allowance for depreciation.

The jurisdiction of this court to interfere with the amount of verdicts, including those for punitive damages, is quite limited and rarely exercised. *Bowers v. Charleston & W. C. Ry. Co.* (both opinions), 210 S. C. 367, 42 S. E. (2d) 705; *Dawson v. S. C. Power Co.*, S. C., 66 S. E. (2d) 322. *Cook v. C. I. T. Corporation*, 191 S. C. 440, 4 S. E. (2d) 801, 125 A. L. R. 306, was a somewhat similar case to this and the verdict for actual and punitive damages, each, respectively, a little larger. It was rendered in 1938 and sustained on appeal in 1939 when it is well known and within common knowledge that the dollar was

worth about twice its present value. This consideration has properly entered into former judgments of this court. *Bowers v. Charleston & W. C. Ry. Co., supra; Haselden v. Atlantic Coast Line R. Co.,* 214 S. C. 410, 53 S. E. (2d) 60, *certiorari* denied 338 U. S. 825, 70 S. Ct. 73, 94 L. Ed. 501; *Jennings v. McCowan,* 215 S. C. 404, 55 S. E. (2d) 522. It is but another evil of inflation. The subject is treated at length with respect to verdicts for personal injuries and wrongful death in an annotation in 12 A. L. R. (2d) 611. The concept was applied to punitive damages in *Bucktrot v. Partridge,* 130 Okl. 122, 265 P. 768, which was also included in *Jennings v. McCowan, supra.*

On unsuccessful motions by appellant for judgment *non obstante* and for new trial, in a brief but well-considered order the trial judge disposed of the issues made by the motions and said the following, which we approve and affirm:

"The positions taken on motion for new trial that there was no proof of actual damages, or any basis upon which punitive damages could be assessed, and that the verdict is arbitrary, resulting from bias and prejudice, cannot be sustained. While the plaintiff, as a witness, was timid or embarrassed, and make no extravagant claims, she was an impressive witness and convinced the jury. In addition to her testimony as to the condition of the automobile, from which the jury could arrive at the amount of actual damages, she offered testimony that the car was almost immediately priced at Thirteen Hundred ($1,300.00) Dollars, at least; defendant furnished testimony that it was priced at Twelve Hundred Ninety-five ($1,295.00) Dollars, and without delay it was sold at wholesale. The absence of proof of defendant's financial condition does not invalidate the verdict for punitive damages as a matter of law, as claimed. There was testimony that the defendant was organized by General Motors Corporation to assist in the sale of its products, and hence is a large corporation. The manager of the defendant's Spartanburg office testified that this

branch alone financed the automobiles sold by some thirty (30) dealers. However, much larger verdicts have been sustained against individuals in cases where there was no evidence of financial ability. For example, see *Strickland v. Moskos,* 131 S. C. 247, 127 S. E. 265, when the dollar had a much larger purchasing power. Furthermore, I am satisfied that the verdict is within the realm of the broad discretion committed to juries in fixing the amounts of verdicts, and that I should not disturb it. Accepting plaintiff's testimony as true, as the jury did, defendant wrongfully forced plaintiff to surrender her car by taking advantage of her humble station in life, and followed it by treating with total indifference her plea for at least a public sale thereof. The right to the possession of personal property is jealously guarded by the law,' *Young v. Corbitt Motor Truck Company,* 148 S. C. 511, 534, 146 S. E. 534."

The judgment is affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.