Owen C. THOMPSON, Jr., Plaintiff,

v.

FORD MOTOR CREDIT COMPANY,
Defendant.

Civ. A. No. 70–694.

United States District Court,
D. South Carolina,
Greenwood Division.

March 10, 1971.

———◆———

W. Ray Berry, of Fulmer, Berry & Alford, Columbia, S. C., and J. Roy Berry, Johnston, S. C., for plaintiff.

J. Means McFadden, of Robinson, McFadden, Moore & Pope, Columbia, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

Plaintiff seeks damages of defendant for the alleged conversion[1] of a 1969 Ford, and certain articles of personal property stored therein. The alleged tortious action took place in South Carolina. Upon call of the case for pre-trial and calendar purposes counsel announced their willingness to stipulate the facts and submit the issues to the court on briefs, which was done. Upon examination of the record and review of memoranda submitted by counsel this court publishes its

## FINDINGS OF FACT

### (All Facts Stipulated)

1. On March 20, 1969, Owen C. Thompson, Jr., hereinafter referred to as Thompson, purchased a 1969 Ford automobile from Arrants Ford Sales, of Ortonville, Michigan. After a trade-in the balance of the purchase price was financed by the dealer who thereafter, for valuable consideration, assigned the Michigan Automobile Retail Instalment Contract executed by Thompson at the time of the purchase to the defendant Ford Motor Credit Company, hereinafter referred to as FMCC. At the time of purchase Thompson was a resident of Goodrich, Michigan, as he had been for a period of approximately three years.

2. Thereafter Thompson and his family moved to South Carolina, where he was living on June 24, 1970.

3. On June 24, 1970, Thompson was in arrears in the monthly payments due on the Michigan Automobile Retail Instalment Contract for the months of March, April and May, 1970.

4. On June 24, 1970, an agent of FMCC located the Ford automobile in a parking lot adjacent to a project on which Thompson was working, with the keys in the ignition. After identifying the automobile, the agent got in and drove it away. No contact was made with Thompson.

5. Thompson's first knowledge that the vehicle had been repossessed by FMCC was receipt of a letter dated June 24, 1970, and mailed on June 25, 1970, from Dearborn, Michigan, by certified mail, return receipt requested, which letter was receipted for on June 29, 1970. Copy of this letter together with postal receipt and return receipt are included hereinafter.

6. At the time the automobile was driven away from the parking lot adjacent to the construction site there were certain items of personal property in the automobile. Agents of FMCC are clearly of opinion that all of the items were in the trunk of the automobile. Thompson is clearly of opinion that a portfolio was in the glove compartment and a spread was on the front seat of the automobile, with the remaining items in the trunk of the car. The items of personal property referred to are shown on the attached list contained in a letter dated July 16, 1970, which the Greenville office of FMCC wrote to Thompson at his Saluda County address, and which was received by Thompson. Thompson stipulates that the value of these items

---

1. At common law an action for the recovery of damages for the conversion of personal property was called "Trover". Later the action was entitled "Trover and Conversion." Today it is called "Conversion." See Daniel v. Post, et al. (1936), 181 S.C. 468, 187 S.E. 915; Peeples v. Hornik (1929) 153 S.C. 321, 150 S.E. 802.

**110**

of personal property was Fifty-Eight and No/100 ($58.00) Dollars.

7. The parking lot at the construction site above referred to was located in or near the City of Greenwood, in Greenwood County; and, at that time, Thompson was living in Saluda County.

8. The letter of June 24, 1970, agreed upon in the stipulation is as follows:

**Ford Motor Credit Company**

26200 Greenfield Road
Oak Park, Michigan 48237

June 24, 1970

No. 686471

**RECEIPT FOR CERTIFIED MAIL—30¢ (plus postage)**

| SENT TO | POSTMARK OR DATE |
|---|---|
| Mr. Owen Thompson, Jr. | |
| STREET AND NO. P.O. Box 592 | |
| P.O., STATE AND ZIP CODE Greenwood, South Carolina | |

OPTIONAL SERVICES FOR ADDITIONAL FEES

| RETURN RECEIPT SERVICES | 1. Shows to whom and date delivered ............ 15¢ With delivery to addressee only ......... 60¢ 2. Shows to whom, date and where delivered .. 35¢ With delivery to addressee only ...... ...... 85¢ |
|---|---|

DELIVER TO ADDRESSEE ONLY ......................... ...... 50¢
SPECIAL DELIVERY (2 pounds or less) ....................... ....... 30¢

POD Form 3800 — NO INSURANCE COVERAGE PROVIDED— (See other side)
ADD FOR INTERNATIONAL MAIL

Mr. Owen Thompson, Jr.
P.O. Box 592
Greenwood, South Carolina

Dear Mr. Thompson:

Repossessions create a hardship for all parties involved. We know that you intended to pay the installments as scheduled, but for some reason you did not.

Will you telephone us or come in and see us without delay? Perhaps we can work out satisfactory arrangements for you to keep your vehicle, or it may be possible for us to save you unnecessary expense and protect your future credit.

Please give this your careful and immediate attention. We will be glad to help in any way.

[A4001]

Account Representative
566-2640

9.  The letter of July 16, 1970, referred to is as follows:

**Ford Motor Credit Company**

P.O. Box 2085
Greenville, South Carolina 29602

July 16, 1970

Mr. Owen Thompson
Route 3
Saluda, South Carolina

Account # KB A142 J273

Dear Sir:

In repossessing the motor vehicle financed under the above account, we have found the following items of personal property in the vehicle:

1 pair jumper cables
1 hose pipe nozzle
2 window cleaners
1 trailer hitch
1 ½ pint Grande Candian Blended Whiskey (2 oz. in bottle)
1 set of keys (5 on ring)
1 comb
2 screw drivers
1 red sponge ball
1 pair sunglasses
2 Dixie Deluxe Transparent Thins
1 306 cartridge
1 Savings pass book
1 unemployment insurance policy
1 bed spread
$ Sewing Susan kit
2 portfolios with miscellaneous papers

We are holding the property for you at 334 West Stone Ave., Greenville, South Carolina. Please arrange to pick up this property immediately.

By  *R. E. Scott*
R.E. Scott
Collection Coordinator

RES/rh
2cc
[A3890]

10. The stipulation included as an exhibit the Michigan Automobile Retail Instalment Contract. The critical provisions are the same as Nos. 7 and 8 of the "Additional Terms and Conditions" which read as follows:

## No. 7

(a) Time is of the essence of this contract. In the event Buyer defaults in any payment or fails to obtain or maintain the insurance required hereunder, or fails to comply with any of the terms and conditions hereof, or a proceeding in bankruptcy, receivership or insolvency shall be instituted by or against Buyer or his property, or Seller deems the Property in danger of misuse or confiscation, Seller shall have the right, at its election to declare the unpaid portion of the Time Balance, together with any other amount for which the Buyer shall have become obligated hereunder, to be immediately due and payable;

(b) Further in any such event, Seller, its agent or representatives, may take immediate possession of the Property, including any equipment or accessories, and for this purpose Seller, its agents or representatives, may enter upon the premises where the Property may be and remove same, and Seller may take possession of any other items in or on the property at the time of repossession wherever such other items may be, and hold same temporarily for Buyer without liability on the part of Seller;

(c) Such repossession shall not affect Seller's right hereby confirmed, to retain all payments made prior thereto by Buyer. In the event of repossession of the property, and if the Buyer has not redeemed same in accordance with law, Seller may either sell same at public sale (at which Seller may purchase) or dispose of same by private sale or otherwise in such manner and upon such terms as shall appear to Seller to be reasonable without demand for performance, with such notice to Buyer, if any, as may be required by law and with or without having the Property at the place of sale or other disposition; and

(d) The proceeds of any such sale or disposition of the property, less the expense of retaking, holding, preparing for sale and selling the Property and reasonable attorneys' fees and legal expenses incurred by Seller, shall be applied to the partial or complete satisfaction of Buyer's obligations hereunder. The surplus, if any, shall be paid to the Buyer unless otherwise required by law. The deficiency, if any, shall be paid by Buyer to Seller forthwith, upon demand, with interest thereon at the highest lawful contract rate. Seller's rights and remedies hereunder are in addition to any given by law and may be enforced successively or concurrently. Waiver by Seller of any default shall not be deemed a waiver of any other default.

## No. 8

This contract constitutes the entire agreement between Buyer and Seller and no modification of any of the terms and conditions herein shall be valid in any event, and Buyer expressly waives the right to rely thereon, unless made in writing duly executed by Seller. Any provision of this contract prohibited by the law of any state, shall as to such state be ineffective to the extent of such prohibition without invalidating the remaining provisions of this contract. This contract shall be governed by the law of the state in which the Original Seller is located as shown on the face of the contract.

### (AND)

### CONCLUSIONS OF LAW

A. ■ The court has jurisdiction of the parties and the subject matter of the action. 28 U.S.C. 1332.[2]

2. In the brief filed with the court plaintiff calculated his actual damages at a minimum of Two Hundred and 49/100 ($200.49) Dollars for conversion of the

B. ▮▮ The interpretation of any rights of the parties under the Michigan Automobile Retail Instalment Contract is to be determined by the applicable law [3] of the State of Michigan. Both the contract [4] and a wealth of authorities [5] support this position. The action for conversion is a tortious action and the complaint alleges, and the stipulation verifies, that any acts done in connection with the repossession of the automobile, were done in South Carolina. The law of the State of South Carolina would govern as to the alleged tort action. There is no federal common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in nature or "general", be they commercial law or a part of the law of torts. Erie R. Co. v. Tompkins (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188, 1194, 114 A.L.R. 1487.

C. Plaintiff has not seriously contested defendant's right to repossess the car. In his brief he poses a question of: "(1) Did the taking of the plaintiff's vehicle by the agents of the defendant constitute a peaceful taking (peaceful possession) under the facts of the case?" This, says plaintiff is the first of two issues in the case.

Both Michigan and South Carolina have adopted the Uniform Commercial Code—Michigan by Public Act 174 of 1962, effective January 1, 1964, and South Carolina by Act No. 1065 of the Acts and Joint Resolutions of 1966, effective January 1, 1968. In Michigan, it is identified as Chapter 440, Compiled Laws of Michigan, 1948, as amended; and also in Michigan States Annotated, Chapter 190a. In the Compiled Laws, each Code Section is preceded by the designation 440 and the hyphen is omitted, so that § 1–101 is § 440.1101, and in the Statutes Annotated each section number is preceded by the designation 19, so that § 1–101 is 19.1101.

Section 440.9503, Compiled Laws, (Section 19.9503, Michigan Statutes Annotated) provides:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral

---

automobile. It was stipulated the value of the personal items was Fifty-Eight and No/100 ($58.00) Dollars. The complaint alleged actual and punitive damages in the amount of $24,827.50. On its face the amount claimed as punitive damages appears unrealistic, but the record does not give such a picture of bad faith as would warrant dismissal for want of jurisdiction (No motion to remand was filed), so that the sum claimed by the plaintiff controls. St. Paul Mercury Indemnity Co. v. Red Cab Co. (1938), 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845, 849; Hood ex rel. North Carolina Bank & Trust Co. v. Bell (4th Cir. 1936), 84 F.2d 136. See also Annotation 47 A.L.R.2d 651.

3. Statute or common law, as applicable.

4. Section 8 of the "additional terms and conditions" provides: "This contract shall be governed by the law of the State in which the original seller is located as shown in the face of this contract." The face of the contract shows seller to be Arrants Ford Sales—968 M–15—Ortonville, Michigan 48462.

5. Sheerin v. Steele (6th Cir. 1957), 240 F.2d 797, 798, 799, cert. den. 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760; M. W. Zack Company v. R. D. Werner Co., Inc. (6th Cir. 1955), 222 F.2d 634; Transit Bus Sales v. Kalamazoo Coaches, Inc. (6th Cir. 1944), 145 F.2d 804, 805; Gaston, Williams & Wigmore of Canada, Ltd. v. Warner (2nd Cir. 1922), 272 F. 56, affirmed 260 U.S. 201, 43 S.Ct. 18, 67 L.Ed. 210, 212; Murphy v. Equitable Assurance Society of United States, 197 S.C. 393, 407, 15 S.E.2d 646; Livingston v. Atlantic Coast Line R. Co., 176 S.C. 385, 391, 180 S.E. 343; and Columbia Weighing Machine Co. v. Rhem, 164 S.C. 376, 380, 162 S.E. 427.

on the debtor's premises under section 9504.[6]

This section of the Michigan statute is identical with § 10.9–503, Code of Laws of South Carolina for 1962, as amended. The same is true of Section 440.9504, Michigan Compiled Laws, as amended, and Section 10.9–504, South Carolina Code of 1962, as amended.

The provisions of Section 9–501, Uniform Commercial Code, (Section 440.-9501, Michigan, and Section 10.9–501, South Carolina) are also pertinent here, and particularly subsection (1) thereof, which provides, in part pertinent: "When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and except as limited by subsection (3) those provided in the security agreement."

■ Since the Uniform Commercial Code had been enacted and was in force in both Michigan, the place of the contract, and in South Carolina, the forum, in both March, 1969, when the contract was entered into, and in June, 1970, when the automobile was repossessed by FMCC, and since Thompson was in default when the repossession occurred, the rights of the parties should be determined by the terms of the contract, unless these terms violate some rule of law as contained in the Uniform Commercial Code.

The contract provides that "in any such event, (default), Seller, its agents or representatives, may take immediate possession of the property, including any equipment or accessories, and for this purpose Seller, its agents or representatives, may enter upon the premises where the property may be and remove same, and Seller may take possession of any other items in or on the property at the time of repossession, wherever such items may be, and hold same temporarily for Buyer without liability on the part of Seller." The Uniform Commercial Code (UCC) provides: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."

■ Thus, the terms of the contract are not in violation of, but are consistent with, the provisions of the UCC, and the only limitation upon FMCC's right to repossess the automobile was that it must be done without breach of the peace.[7] Defendant clearly had the right to repossess.

D. It appears that the rights of defendant here are identical under Michigan's statute, and interpreting decisions, and similar legislative expressions and court interpretations in South Carolina.[8]

6. The "Practice Commentary" reported with this section in the Michigan Code provides:

The section authorizes a secured party to take possession of the collateral after default. It also permits the secured party to take possession of equipment by rendering the equipment unusable on the premises of the debtor. This technique may have practical and tactical advantages where equipment is bulky and expensive to move. If the security agreement so provides, the secured party may require the debtor to assemble the collateral at a central point. This could be helpful in the case of construction equipment, farm equipment, farm products, inventory, etc.

7. There is no genuine question here of the right of defendant, as assignee entitled to all the rights of the original vendor-mortgagee, to recover possession of the car upon default. Powers v. Fisher (1937), 279 Mich. 442, 272 N.W. 737.

8. In his comments upon Section 10.9–503, the South Carolina Reporter (Dean Foster of the University Law School) stated:

Section 9–503 expresses the present common law rule which entitles the secured party upon default to take possession of the collateral without judicial process provided he can do so peaceably and without breach of the peace.

He cites in support of this statement Castell v. Stephenson Finance Co., 244 S.C. 45, 135 S.E.2d 311 (1964); and Johnson Cotton Co. v. Cannon, 242 S.C. 42, 129 S.E.2d 750 (1963).

The taking of possession was in South Carolina. If a tort were committed in the repossession South Carolina law governs.[9]

The facts here reveal that the repossession was peaceful. An early South Carolina case is Willis v. Whittle,[10] (1909), 82 S.C. 500, 64 S.E. 410, wherein the court ruled:

It is well settled that, after condition broken, the legal title to mortgaged chattels vests in the mortgagee. The right of the mortgagee to seize mortgaged chattels after condition broken is a license coupled with an interest, which cannot be revoked by the mortgagor. It is a part of the consideration of the mortgage, and to allow the mortgagor to revoke it would be a fraud upon the rights of the mortgagee, and would very much impair the value of chattel mortgages as securities. The right to seize carries with it by necessary implication the right to do whatever is reasonably necessary to make the seizure, including the right to peaceably enter upon the premises of the mortgagor. There is one restriction, however, which the law imposes upon this right. It must be exercised without provoking a breach of the peace; and, if the mortgagee finds that he cannot get possession without committing a breach of the peace, he must stay his hand, and resort to the law, for the preservation of the public peace is of more importance to society than the right of the owner of a chattel to get possession of it. Satterwhate v. Kennedy, 3 Strob. 457; Harris v. Marco, 16 S.C. 575, 578. In this case there was no breach of the peace, and, as we have seen, the defendants had an irrevocable license to enter upon the plaintiff's premises to make the seizure. They did so in an orderly manner, and were not trespassers.

■ South Carolina, in Lyda v. Cooper (1933), 169 S.C. 451, 169 S.E. 236, 237 defines: "peace" as a state of tranquility anything which disturbs that state is a breach of the peace. Further, the opinion adopts from Kansas v. Hebert, 48 A.L.R. 85 that "In general terms, a breach of the peace is a violation of public order, a disturbance of public tranquility, by any act or conduct inciting to violence." This court is of the opinion, however, that the tortious act needs no element of violence in order to constitute a breach of the peace. Webber v. Farmers Chevrolet Co. (1938), 186 S.C. 111, 195 S.E. 139; Soulios v. Mills Novelty Co. (1941), 198 S.C. 355, 17 S.E.2d 869.

■ This court concludes as a matter of law that the repossession by defendant evoked no breach of the peace, no disturbance of public tranquility in the slightest degree. The stipulated facts do not reveal that anyone was caused, or exhibited, any excitement at the parking lot where the car was repossessed. There is *no* showing that the acts of de-

9. The law in Michigan is exposed as follows:

A contract of conditional sale of an automobile, which gave the seller the right without demand or notice to take possession of the car upon any default in payments by the buyer, did not authorize agents of seller to break into the buyer's garage and take and withhold the automobile from him, and where such agents did so and in an action by the buyer against them for the value of the car the record showed that plaintiff had complied with every request to pay, and after learning that his car had been taken sought to pay up all that he was required to and tendered the amount claimed to be due, a judgment for defendants will be reversed. Dominick v. Rea (1924), 198 N.W. 184, 226 Mich. 594, 36 A.L.R. 850.

10. See also Richardson v. General Motors Acceptance Corp. (1952) 221 S.C. 14, 68 S.E.2d 874; Pagan v. Drake Furniture Company (1906), 73 S.C. 364, 53 S.E. 542; Childers v. Judson Mills Store Company (1930), 189 S.C. 224, 200 S.E. 770; Justus v. Universal Credit Company (1939), 189 S.C. 487, 1 S.E.2d 508; and Sanders v. General Motors Acceptance Corporation (1936), 180 S.C. 138, 185 S.E. 180.

**116**

fendant constituted other than a peaceful taking.

E. ■ In plaintiff's brief, the second issue propounded was: (2) Did the acts of the agents of the defendant in failing to inspect plaintiff's vehicle for personal property therein, or in failing to return said property after discovery thereof, constitute an unlawful conversion thereof?

The personal items, according to FMCC's representatives, were found in the trunk of the automobile after it was repossessed. Thompson maintains that the spread was on the front seat, and that a portfolio was in the glove compartment of the automobile, but apparently concedes that the remaining items were in the trunk. These personal items were listed in a letter to Thompson from FMCC's Greenville Office, dated July 16, 1970, advising him that they were being held for him, and the agreed value of all these items is $58.00. As the record shows, Thompson had already commenced action against FMCC at that time.

In Sanders v. General Motors Acceptance Corporation,[11] plaintiff brought action against defendant for the unlawful and wanton seizure and conversion of an automobile, and of certain personalty which was in the automobile at the time of its seizure by defendant. The facts recited in the opinion reveal that, while plaintiff was in a restaurant in Barnwell eating dinner, with the automobile parked on the public square, an agent of defendant entered the automobile and, with a key furnished by his superiors, started the vehicle and drove it to Georgia "as quick as he could." The Supreme Court, speaking through Mr. Justice Fishburne, held that this was no conversion as to the automobile, since the debt was past due; and plaintiff was not entitled to, and recovered no, damages for the repossessing of the automobile.

As to the personal property in the automobile, however, the court construed the provision of the contract that seller might take any other property in the vehicle at time of repossession as having the following meaning:

In repossessing this car, whether by judicial proceeding or by its own act, the defendant, under its mortgage, had no right whatever to deprive the plaintiff of any visible property, and the only purpose and effect of the quoted provision in the contract, relied on by defendant, was to protect it from liability for taking possession of property which would require a minute checking and searching of the interior of the car to discover, such as property which might not be readily visible, which might be in its pockets or compartments of the car, or under the seats.

The trial court was correct in holding that the contract did not authorize the seizure and carrying away of other property plainly visible to any one taking possession of the car. (180 S. C. 146, 147, 185 S.E. 183).

As pointed out above, the contract here authorizes the Seller, upon default to take possession of any other items in or on the property, wherever such items may be—clearly broader than the authorization in *Sanders*; but, in any event, the only item that could have been visible was the spread, even under Thompson's view of the location, since he maintains that the spread was on the front seat, a portfolio was in the glove compartment, and the other items were in the trunk. FMCC's agents who repossessed the automobile all agree that these items were in the trunk.

Regardless of where the articles were, there is no evidence of any attempt on the part of defendant to take and keep the same or convert them to the defendant's own use. The contract was similar to the one in *Sanders*, supra, and this court cannot impute conversion on the facts stated. Furthermore, there is no showing of any intention on the part of defendant to keep possession away from plaintiff.

11. 180 S.C. 138, 185 S.E. 180 (1936).

CONCLUSION

Under the contract to which plaintiff and defendant were each and both bound, and which defined the authority of the parties as to their rights thereunder, defendant had a right to repossess the automobile, with the incidental personal contents. This defendant accomplished within the terms of the contract in a peaceable manner. Defendant committed no tort therein or thereabout.

The Clerk will enter judgment for defendant.

And it is so ordered.