(668 P.2d 183)

No. 54,573

NORMA J. WADE, *Appellee*, v. FORD MOTOR CREDIT COMPANY, *Appellant*.

 Opinion filed August 11, 1983. 

*Rex G. Beasley,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, for the appellant.

*Randall K. Rathbun,* of Depew and Gillen, of Wichita, for the appellee.

Before ABBOTT, P.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This is an appeal by defendant Ford Motor Credit Company (Ford) from a judgment against it and in favor of plaintiff Norma J. Wade, awarding her damages for conversion, loss of credit reputation, punitive damages and attorney fees in an action arising out of Ford's alleged breach of the peace in the repossession of Wade's car.

Wade entered into an automobile retail installment contract on August 9, 1979, for the purchase of a 1979 Ford Thunderbird automobile. The contract was assigned to Ford which advanced $6,967.75 to enable her to purchase the car. Pursuant to the terms of the contract, Ford had a security interest in the car which had been fully perfected. Wade contracted to pay Ford forty-eight equal monthly installments of $194.52 commencing September 8, 1979. Wade was late with these payments right from the start. The following illustrates her payment record:

| Payment Due: | Payment Made: |
| --- | --- |
| September 8, 1979 | September 17, 1979 |
| October 8, 1979 | October 23, 1979 |
| November 8, 1979 | January 18, 1980 |

December 8, 1979 February 14, 1980
January 8, 1980 March 4, 1980

No other payments were made.

On December 6, 1979, Ford mailed Wade a notice of her default and of her right to cure the default. The notice was mailed to Wade pursuant to K.S.A. 16a-5-110 and 16a-1-201(6), and was sent by certified mail to the address listed in Ford's records from the information provided by Wade. It was returned to Ford several days later marked "Return to sender, moved, left no address." Wade had moved and not notified Ford of a new address. K.S.A. 16a-1-201(6) provides:

"For the purposes of K.S.A. 16a-1-101 through 16a-9-102, and amendments thereto, the residence of a consumer is the address given by the consumer as the consumer's residence in any writing signed by the consumer in connection with a credit transaction. Until the consumer notifies the creditor of a new or different address, the given address is presumed to be unchanged."

The trial court found that Ford had complied with the statutory notice requirements precedent to repossession. That finding stands since Wade has not appealed from it.

Collection efforts continued after the mailing of the above notice. After communication with Wade, a payment was received and promises of additional payments were made. With the account still in arrears, Ford assigned it on February 4, 1980, to the Kansas Recovery Bureau, a subsidiary of Denver Recovery Bureau, as independent contractors to repossess the car.

On or about February 10, 1980, in the early afternoon, David Philhower, an employee of Kansas Recovery Bureau, located the car in the driveway of Wade's residence. He had a key for the car, so he unlocked the door, got in and started it. Philhower then noticed an apparent discrepancy between the serial number of the car and that listed in his papers. He shut the engine off, got out and locked the car door. At that time Wade appeared at the door of her house. Philhower told her that he had been sent there by Ford to repossess the car, and she replied that he was not going to take it because she had made the payments on it. She invited him in the house to prove her claim, but was unable to locate the cancelled checks and receipts for the payments made. Philhower told her of the serial number discrepancy, and stated that he was not going to take the car until he confirmed the

number, and advised her to contact Ford to straighten out the problem.

Wade then told him that if he came back to get the car that she had a gun in the house, which she had obtained because of several burglaries in the area, and she would not hesitate to use it. She then called a representative of Ford and stated she had a gun and that if she caught anyone on her property again trying to take her car, that "I would leave him laying right where I saw him."

Ford then received two more payments, the last being received March 4, 1980. On March 5, 1980, Ford reassigned the account to Kansas Recovery Bureau for repossession. In the early morning hours of March 10, 1980, at around 2:00 a.m., Philhower made another attempt to repossess the car from the driveway of Wade's residence. This time he was successful. Wade heard a car "burning rubber" at around 2:00 a.m., looked out the window, and discovered her car missing. There was no confrontation between Wade and Philhower, since Wade was not even aware of the fact her car was being repossessed until after Philhower had safely left the area in the car. Upon calling the police, Wade was informed that her car had been repossessed. Philhower had informed the police just prior to the repossession that he was going to recover the car in case they received reports of a prowler.

Wade subsequently brought an action against Ford for wrongful repossession, conversion and loss of credit, and sought both actual and punitive damages, along with attorney fees. Ford filed a counterclaim for breach of contract, seeking the deficiency of $2,953.44 remaining after the car was sold at public auction.

After a trial to the court, the trial court found Ford had breached the peace in repossessing the car and found in favor of Wade. The trial court also found for Ford on its counterclaim. Wade was awarded damages and attorney fees.

Ford appeals, raising the following two issues: (1) Did the trial court err in finding that Ford breached the peace on March 10, 1980, when it repossessed Wade's car? (2) Did the trial court err in assessing damages against Ford?

Defendant Ford contends that the trial court erred in finding that Ford breached the peace on March 10, 1980, when its agent repossessed Wade's car. The issue presented can be stated as follows: Does the repossession of a car, when there is no contact

or confrontation between the repossessor and the debtor at the time and place of repossession, constitute a breach of the peace when there has been a prior threat of deadly violence if repossession is attempted? This particular set of facts has not been addressed by the courts before.

The trial court found that Ford had breached the peace in repossessing Wade's car. In its findings and conclusions made at the conclusion of the trial, the trial court emphasized Wade's lack of consent to the repossession and stated: "It's this Court's view that the Legislature, when it permitted self-help repossession, it was meant to cover amicable situations where there was no dispute as there apparently was in this particular case." At the hearing on defendant's motion to alter the judgment, the trial court stated:

"[I]n no way did she consent at no time did she consent to the peaceful recovery of the security, namely, one automobile that she kept and maintained on her private property, namely, that of her residence. The plaintiff, having threatened Mr. Philhower, the recovery agent, with bodily harm through the use of a lethal weapon known as a revolver, having informed Mr. Philhower never to enter her property again, otherwise she would shoot him. So, that being the last communication between Philhower and the plaintiff, at a later date when it was a month 'or so later, I don't recall since this hearing was seven months ago, Mr. Philhower, after that initial confrontation at 2:00 o'clock in the morning, 1:00 in the morning, quietly entered this private property, in effect, in this Court's opinion, taking the law in its own hands, come what may.

"Now, fortunately, no harm resulted from his entry on this private property. He was willing to assume that risk and that danger, knowing full-well that had he awakened the plaintiff, violence could very well have occurred and ensued. He knowingly and willfully brought that situation about in our community.

"I am reminded in some ways of the old frontier Wichita, Kansas in where firearms were used as a settlement of personal differences. Fortunately, the law and the courts have supplemented that mode or method of settling private differences.

"We have in this state the replevin action, which provides for an orderly process for the recovery of personal property held under a security for a debt and under oath, the parties are privileged to come into the court and expose through the witnesses and their evidence to the court, their claims such as in this case, the defendant claimed that the plaintiff was past due on her note involving the automobile involved here. Then, likewise, in that same hearing, the plaintiff in a replevin action would have had the right and the privilege to be heard by a judge or a jury to determine and make the finding as to whether or not she was in fact delinquent and in violation of her promise to pay thus providing for her being relieved of the security of the automobile in this case.

. . . .

"These facts violate every principle of civilized procedures that is understood

as to why we have the courts and why we have the law to avoid confrontations between parties to avoid dangers to life, limb, and property. It's an orderly process that we seek to serve in this case.

"The Court is very grateful that no violence did ensue, result from the ultimate repossession of the car by Mr. Philhower, but nevertheless, is of the view that such action as came out in this court, done by Mr. Philhower was a breach of the peace.

"The Court is convinced that the purpose of permitting creditors to obtain a peaceful repossession, recovery of their securities such as an automobile in this case, would apply to instances where the recovery is freely done without threats of violence with consent of the parties and in view of the facts, this Court feels that the threat of firearms that this was a breach of the peace and will affirm the decision made in October, 1981, after hearing the evidence. The motion of the defendant is denied."

It appears that the trial court put a great deal of emphasis on Wade's lack of consent and the great potential for violence involved in the second repossession attempt.

K.S.A. 16a-5-112 provides:

"Upon default by a consumer, unless the consumer voluntarily surrenders possession of the collateral to the creditor, the creditor may take possession of the collateral without judicial process only if possession can be taken without entry into a dwelling and without the use of force or other breach of the peace."

K.S.A. 84-9-503 provides in part:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."

The statutes do not define the term "breach of the peace." The courts are left with that job. There are few Kansas cases doing so, but numerous cases from other jurisdictions. The leading Kansas case is *Benschoter v. First National Bank of Lawrence,* 218 Kan. 144, 542 P.2d 1042 (1975), where the court found that the self-help repossession provisions of K.S.A. 84-9-503 do not violate constitutional due process. The court also held:

"A creditor may repossess collateral without judicial process if this can be done without breach of the peace. Standing alone, stealth, in the sense of a debtor's lack of knowledge of the creditor's repossession, does not constitute a breach of the peace." Syl. ¶ 2.

The court further discussed "breach of the peace":

"White and Summers in their Handbook of the Law under the Uniform Commercial Code (West Publishing Co., 1972, pp. 966-975), discuss the essential

requirement that repossession be peaceful and what constitutes a breach of the peace, as follows:

" '. . . To determine if a breach of the peace has occurred, courts inquire mainly into: (1) whether there was entry by the creditor upon the debtor's premises; and (2) whether the debtor or one acting on his behalf consented to the entry and repossession.' (p. 967.)" p. 154.

An extensive search of the cases in other jurisdictions does not reveal a case on point which involved an initial confrontation with a threat of future violence, an intervening period of time with communication between the parties, and a subsequent successful repossession without incident.

In *Morris v. First Natl. Bank & Trust Co.,* 21 Ohio St. 2d 25, 254 N.E.2d 683 (1970), the court considered a case involving a self-help repossession statute similar to Kansas'. The facts included a confrontation at the time of repossession. The court noted:

"While we leave the question of conversion to be determined in future proceedings below, we are constrained to hold that when appellee's agents were physically confronted by appellant's representative, disregarded his request to desist their efforts at repossession and refused to depart from the private premises upon which the collateral was kept, they committed a breach of the peace within the meaning of Section 1309.46, Revised Code, lost the protective application of that section, and thereafter stood as would any other person who· unlawfully refuses to depart from the land of another." p. 30.

The Ohio court further stated:

" ' "In general terms, *a breach of the peace is* a violation of public order, *a disturbance of the public tranquility, by any act* or conduct inciting to violence or *tending to provoke or excite others to break the peace,* or, as is some times said, it includes any ·violation of any law enacted to preserve peace and good order. *It may consist of* an act of violence or *an act likely to produce violence." '* (Emphasis added.) *Akron v. Mingo,* (1959), 169 Ohio St. 511, 513, 160 N.E.2d 225." p. 29.

The court noted that the main purpose of the self-help repossession provisions is "the uniform expansion and encouragement of commercial transactions in this state, and that the statutes therein should be liberally construed to effectuate that purpose. However, such construction cannot be permitted to defeat our fundamental public policy of discouraging extrajudicial acts by citizens when those acts are fraught with the likelihood of resulting violence." p. 29.

In *Cherno v. Bank of Babylon,* 54 Misc. 2d 277, 282 N.Y.S.2d 114 (1967), *aff'd* 29 App. Div. 2d 767, 288 N.Y.S.2d 862 (1968), the court dealt with a case which had as one of its issues whether

the provisions of U.C.C. 9-503 concerning repossession without breach of the peace had been complied with. The facts of the case are unlike those in the present case in that the creditor's agents used a key and entered the debtor's premises to repossess the secured items. The court stated:

"The classic definition of breach of the peace is 'a disturbance of public order by an act of violence, or by an act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community' (*People v. Halliday* [237 App. Div. 302], p. 303; *People v. Chesnick,* 302 N.Y. 58, 60; *People v. Most,* 171 N.Y. 423, 429)." p. 281.

In *Census Federal Credit Union v. Wann,* _____ Ind. App. _____, 403 N.E.2d 348 (1980), the court also considered self-help repossession under U.C.C. 9-503 and what constitutes breach of the peace. There the creditor made demand on the debtor for possession of the secured car. The debtor refused to give possession of it to the creditor. Unlike the present case, there were no threats of future violence. Thereafter, the creditor, through its agents and without benefit of any judicial process, took possession of the car at approximately 12:30 a.m. by taking it from the parking lot of the apartment building where the debtor lived. During this second, successful, repossession attempt, no contact whatever was had by the creditor's agents with the debtor or any other person in the immediate control of the car. The court provided the following discussion on breach of the peace:

"In *Deavers v. Standridge,* (1978) 144 Ga. App. 673, 242 S.E.2d 331, the court held that blocking the movement of the defaulting debtor's automobile after his oral protest to the secured party's repossession attempt was a breach of the peace.

"A definitive statement of this type of suit and the rights and limitations of a secured party and the defaulting debtor was expressed in *Thompson v. Ford Motor Credit Company,* (5th Cir. 1977) 550 F.2d 256. In that case the finance company under a similar self-help statute winkled the automobile of a defaulting party away from a garageman who had custody of it for repairs. There the court, in ruling for the finance company, said, in 550 F.2d at 258:

" 'The gist of the action of trespass is an injury to the possession of personal property by use of unlawful force. Unlawful force is the essential element of the action. . . . Such force may be actual physical force or it may be constructive force. Constructive force in such cases has been defined in a general way as that sort, such as threats or intimidation, to compel the submission of plaintiff against his will to the appropriation of what he asserts to be his property. . . . The threats or intimidation referred to are those which if carried out would amount to a breach of peace or if resisted would tend to promote a breach of peace. *We have found no case in which such threats and intimidation*

*did not occur in the presence of the plaintiff and at the time of the taking.'* (Citations omitted.)

"Cases in other jurisdictions have held that absence of consent of the defaulting party to repossession is immaterial to the right of a secured party to repossess without judicial process. *Thompson, supra; Speigle v. Chrysler Credit Corporation,* (1975) 56 Ala. App. 469, 323 So. 2d 360; *Ford Motor Credit Company v. Ditton,* (1974) 52 Ala. App. 555, 295 So. 2d 408; *Hollembaek v. Alaska Rural Rehabilitation Corporation,* (1968 Alaska) 447 P.2d 67; *Ford Motor Credit Company v. Cole,* (1973 Tex. Civ. App.) 503 S.W.2d 853. This, of course, is a necessary result, for contrary to the argument of plaintiff, Ind. Code 26-1-9-503, by its very existence, *presupposes that the defaulting party did not consent.* Should the defaulting party consent, no statutory authority would be required for a secured party to repossess, with or without judicial process. To hold otherwise would emasculate that statute.

"Analysis of the above authorities reveals no substantial conflict. They reveal to us, in regard to the right of a secured party to repossess a chattel upon default without resort to judicial process pursuant to Ind. Code 26-1-9-503, a proscription of a secured party's use of force, intimidation, or harassment in the repossession of a chattel. The secured party may not in the process of repossession break into or enter into homes or other buildings or enclosed spaces, or commit any crime against the defaulting party, or disturb the peace, or otherwise commit any breach of the peace. Repossession upon default is not, in and of itself, a criminal trespass under Ind. Code 35-43-2-2(4). *Consent for the repossession of the chattel by the defaulting party is not necessary.* The secured party may, in repossession without judicial process under Ind. Code 26-1-9-503, take a chattel off a street, parking lot or unenclosed space. However, even in the attempted repossession of a chattel off a street, parking lot or unenclosed space, if the repossession is verbally or otherwise contested *at the actual time of and in the immediate vicinity of* the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court. We approve the reasoning contained in these authorities." (Emphasis supplied.) pp. 351-52.

In *Ford Motor Credit Company v. Ditton,* 52 Ala. App. 555, 295 So. 2d 408, *writ denied* 292 Ala. 423 (1974), the court also dealt with the issue of whether there had been a breach of the peace in a self-help repossession done pursuant to U.C.C. 9-503. There the debtor refused to surrender the secured car and informed the creditor's agents that they would have to resort to legal channels in order to recover the car. Again, no threats of violence were made by either the debtor or the creditor's agents. The creditor subsequently repossessed the car by towing it away from the parking lot of the debtor's place of employment while the debtor was working. As in the present case, no contact was had at the time of the successful repossession between the

creditor's agents and the debtor. The court found no breach of the peace and stated:

"It can be safely stated that absence of consent to repossession of personal property for default in payment of conditional sales contract is implied. A demand for possession is not required. Refusal of consent after demand for possession does not of itself require resort to legal channels for recovery. It was stated in the case of *Street v. Sinclair,* supra [71 Ala. 110] that subject to the limitation that recaption must not be perpetrated in riotous manner or attended with a breach of the peace, 'The owner of personal property, wrongfully withheld from him, may have redress by his own act without resorting to the delay of litigation. But he proceeds at his own peril if he commit the slightest assault or other breach of the public peace, for, if individuals were thus allowed to redress their own private injuries, the peace of society and good order of government would cease.' " p. 558.

We find it is clear from a survey of the cases dealing with self-help repossession that the consent of the debtor to the repossession is not required. K.S.A. 16a-5-112 even presupposes the lack of consent: "Upon default by a consumer, unless the consumer *voluntarily surrenders* possession . . . ." (Emphasis supplied.) The trial court's emphasis on the lack of consent by Wade in the present case and its view that "the Legislature, when it permitted self-help repossession . . . meant to cover amicable situations where there was no dispute . . . ." are not founded in case law. Repossession, without the consent of the debtor, absent more, does not constitute a breach of the peace by the creditor.

The trial court also emphasized the potential for violence brought on by Wade's threats made during the first repossession attempt. A breach of the peace may be caused by an act likely to produce violence. The facts presented in this case do not, however, rise to that level. A period of one month elapsed between the repossession attempts. During that period, Wade and Ford were in communication and two payments were made. We find the potential for violence was substantially reduced by the passage of this time. Moreover, the actual repossession was effected without incident. The time of the repossession was such that in all likelihood no confrontation would materialize. In fact, Wade was totally unaware of the repossession until after Philhower had successfully left the premises with the car. We therefore find that as a matter of law there was no breach of the peace in the repossession of Wade's car.

The trial court's judgment finding a breach of the peace is

reversed, and the case is remanded for a modification of the award of damages in accordance with this opinion.

Wade's motion for attorney fees on appeal is denied.

Reversed and remanded with directions.