SALISBURY LIVESTOCK COMPANY,
a Wyoming Corporation,
Appellant (Plaintiff),

v.

COLORADO CENTRAL CREDIT UN-
ION, a Cooperative Association of the
State of Colorado; Al Weltzheimer;
Tom Clark; Gordon Srock; and Darren
Boling, Appellees (Defendants).

No. 89–147.

Supreme Court of Wyoming.

June 13, 1990.

Frederick J. Harrison, Rawlins, for appellant.

Kaye Willis, Laramie, for appellees Tom Clark, Gordon Srock and Darren Boling.

Woon Ki Lau and Margaret S. Choi of Lau & Choi, P.C., Denver, Colo., for appellees Colorado Cent. Credit Union and Al Weltzheimer.

Before CARDINE, C.J., THOMAS, URBIGKIT and GOLDEN, JJ., and ROONEY, J. (Retired).

GOLDEN, Justice.

This is an appeal from a directed verdict granted to appellees Colorado Central Credit Union, and Al Weltzheimer, Tom Clark, Gordon Srock, and Darren Boling, (all appellees will be referred to as Colorado Central in the analysis) in a trespass action resulting from a vehicle repossession that occurred on appellant Salisbury Livestock Company's lands. The district court granted the directed verdict after finding that Colorado Central's entry to conduct the repossession was privileged and that reasonable men could not differ on the verdict. We do not agree. We reverse the directed verdict and remand for a new trial.

## FACTS

Salisbury Livestock Company (Salisbury Livestock) initiated the trespass action in response to Colorado Central's repossession of vehicles owned by George Salisbury III (young Salisbury) from Wyoming property of Salisbury Livestock. Salisbury Livestock is a family corporation run by young Salisbury's father, George Salisbury, Jr.; it is registered in Wyoming and possesses land in Wyoming and in Colorado. The disputed repossession of the vehicles took place on Salisbury Livestock's Ladder Ranch, which is on the Wyoming side of the Wyoming–Colorado state border.

Young Salisbury had pledged the repossessed vehicles, along with three others, as collateral for a $13,000 loan from Colorado Central in October of 1984. This loan was made while he was living in the Denver area. He defaulted on the loan in March, 1986. He had defaulted on the loan once before, in October of 1985, and Colorado Central had repossessed one of his vehicles, which he subsequently redeemed. Colorado Central had then given young Salisbury an extension until February 15, 1986, meaning that he paid only interest from October, 1985, until February, 1986. He made the February, 1986 payment, but did not make any further payments.

At some time in early 1986 young Salisbury left Denver and returned to Slater, Colorado, where he resided near the Salisbury Livestock Wyoming property on which his mother and father lived. Colorado Central sent notice of default to his Slater, Colorado mailing address in May, 1986, but did not receive a response. In July, 1986, Colorado Central decided to repossess the vehicles pledged as security on the loan. Weltzheimer, Colorado Central's credit manager, hired C.A.R.S.–U.S.A., a car repossession company to retrieve the vehicles.

On the evening of July 27, 1986, C.A.R.S.–U.S.A. owner Clark and employees Srock and Boling (and one other C.A.R.S.–U.S.A. employee not made a party to the action) left Denver with two tow trucks to repossess young Salisbury's vehicles. Before leaving Denver, Clark had called young Salisbury's Slater, Colorado home and received directions for finding it from an unidentified woman. The repossession crew arrived at young Salisbury's home about 5:00 the next morning. They found one of the vehicles, a van, parked just off the highway in front of the house and with the key in the ignition. Clark looked inside a small shed or garage on the property and scouted the area around the house for the other vehicles, but did not find them.

Taking the van, they drove a short distance back up the road they had just travelled, Colorado Highway 129, to a large "Salisbury" sign that had been mentioned

as a landmark by the unidentified woman Clark talked to on the telephone, and which they had noticed on their way to young Salisbury's home. The sign was adjacent to a private drive or roadway. Although they could not see any vehicles from the highway, the repossession crew turned down the drive. After travelling about fifty yards they spotted several vehicles in the ranch yard. When they reached the vehicles they identified two from their assignment form, a Corvette and a conversion van. They pushed the Corvette onto the drive so that they could reach it with one tow truck, backed up to the conversion van with the other tow truck, hooked both vehicles up, and towed them away.

At the time, it was light, and appellees reported that they heard people stirring in a nearby building. They did not attempt to obtain permission to enter the property or to take the vehicles. Clark testified that he did not plan on contacting anyone as it was his intention to avoid a confrontation. George Salisbury, Jr. testified that after the repossession he discovered that the repossessors had apparently broken a two-by-four that was lying on the ground near the repossessed vehicles.

After the repossession young Salisbury explained his financial problems to his father. The two agreed on a loan that permitted young Salisbury to redeem the vehicles on August 4, 1986, with a check drafted by his father. Salisbury Livestock, owner of the Wyoming property from which the Corvette and conversion van were towed, then initiated this trespass action.

## STANDARD OF REVIEW

We apply the same standard to review a directed verdict as was employed by the district court in deciding the motion for the directed verdict. That is, "we must, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, determine whether there can be but one conclusion as to the verdict that reasonable jurors could have reached." *Anderson v. Foothill Industrial Bank,* 674 P.2d 232, 238 (Wyo.1984). In so doing, we consider the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences from the evidence. *Id.* We give no deference to the findings of the trial court. *Id.*

## ANALYSIS

Salisbury Livestock contends that the directed verdict was improper, as entry was without privilege under W.S. 34–21–962 (July 1986 Repl.) (secured party's right to take possession after default) because an entry on lands of another without consent is a trespass, which is itself a breach of the peace. It argues that, if Restatement (Second) of Torts § 198 (1965) applies, the repossessors failed to make a demand for the vehicles, and that the time and manner of entry were otherwise unreasonable, so that the entry was not privileged. It disputes Colorado Central's assertion that it should be charged with knowledge of the loan to young Salisbury, and it claims that it is an innocent third party.

Colorado Central and the individual appellees respond that the trial court was correct that their entry was privileged by W.S. 34–21–962. They point specifically to the statute's second sentence, which states, "[i]n taking possession a secured party may proceed without judicial process if this can be done without a breach of the peace." Appellees claim that their entry to repossess the pledged vehicles was therefore privileged because they did not breach the peace. They further rely on the district court's finding that W.S. 34–21–962 is underlain by Restatement (Second) of Torts § 198. Finally, responding to Salisbury Livestock's assertion that the corporation is a third party not involved in the loan transaction between Colorado Central and young Salisbury, they point to young Salisbury's statement on his loan application that he was a part owner of Salisbury Livestock, which, they argue, means the corporation had constructive knowledge of the loan. The argument proceeds that, if Salisbury Livestock is charged with knowledge of the loan, then consent in the loan

agreement provides another good defense to the trespass claim.

Our review convinces us that Salisbury Livestock is entitled to have a jury decide the merits of its argument. There is no real disagreement as to whether a trespass occurred.[1] The crux of this dispute is whether the entry to repossess was privileged either by the self-help statute or by consent. From our review of the evidence in a light favorable to Salisbury Livestock, we conclude that a reasonable jury could find that it was not.

In determining the application of our self-help statute, W.S. 34–21–962, there are three initial considerations. First, that statute is Wyoming's verbatim codification of Uniform Commercial Code § 9–503 (1981). Section 9–503, in turn, incorporates the preexisting right of extrajudicial repossession. Comment, *Breach of Peace and Section 9–503 of the Uniform Commercial Code—A Modern Definition for an Ancient Restriction*, 82 Dickinson L.Rev. 351, 354 (1978). The drafters of the Uniform Commercial Code did not intend that § 9–503 create new rights or obligations concerning the self-help remedy. *Id.* In the same vein, this court has said before that we will not presume that a statute changes the common law unless it does so explicitly. *State v. Stovall*, 648 P.2d 543, 548 (Wyo.1982). The underlying common law governing this entry to repossess is expressed, as was recognized by the trial court, in Restatement (Second) Torts § 198.[2]

Second, because the Wyoming statute is the enactment of a uniform law, our interpretation is governed by W.S. 8–1–103(a)(vii) (June 1989 Repl.): "Any uniform act shall be interpreted and construed to effectuate its general purpose to make uniform the laws of those states which enact it." Consequently, to make a consistent application in this case, we must consider what self-help acts our sister jurisdictions have found protected by the same, or similar, statutory language.

Finally, we agree with the statement that "courts disfavor self-help repossession because, if abused, it invades the legitimate conflict resolution function of the courts." Note, *Is Repossession Accompanied by Use of Stealth, Trickery or Fraud a Breach of the Peace Under Uniform Commercial Code Section 9–503?*, 40 Ohio St. L.J. 501, 504 (1979). While recognizing that W.S. 34–21–962 extends a conditional self-help privilege to secured parties, we will read the statute narrowly to reduce the risk to the public of extrajudicial conflict resolution. Although it is apparent that the self-help remedy is efficient for creditors and results in reduced costs of credit for debtors, Id. at 506, we must seek a reasonable balancing of that interest against private property interests and society's interest in tranquility.

We then look to the language of W.S. 34–21–962 to establish the parameters of the protection it offers to secured parties who seek to repossess collateral without judicial process. The statute provides in pertinent part that "[i]n taking possession a secured party may proceed without judicial process if this can be done without breach of the peace * * *." Obviously, the key to whether a self-help repossession is privileged by the statute is whether the peace has been breached. Colorado Central agrees, but argues that the facts demonstrate that there was no breach of the peace. Salisbury Livestock would have us

---

1. A trespass against real property is simply defined as, "consist[ing] of an interference with the possessor's interest in excluding others from the land." Restatement (Second) of Torts § 163 (1965). In its ruling on the motion for a directed verdict the district court said, "I don't think that there's any doubt under any law that [the entry to repossess] was a trespass, because there was an intentional entering of the land of another."

2. Colorado Central argued that § 183 should apply instead of § 198. While both sections are located in Chapter 8, "Privileged Entries On Land", they are found in separate topics. Section 198 is found under Topic 2, "Privileges Arising Irrespective of Any Transaction between the Parties", which applies to these facts. Section 183 is included under Topic 1, "Privileges Based on Past Consent–Irrevocable License," which does not apply absent a showing of consent.

define breach of the peace as including simple trespass.

W.S. 34–21–962 does not define breach of the peace, and there is no definition offered elsewhere in the Wyoming statutes that address rights of secured parties.[3] In our review of decisions from other jurisdictions we find no consistently applied definition, but agree with the analysis of the Utah Supreme Court in *Cottam v. Heppner*, 777 P.2d 468, 472 (Utah 1989), that, "[c]ourts have struggled in determining when a creditor's trespass onto a debtor's property rises to the level of a breach of the peace. The two primary factors considered in making this determination are the potential for immediate violence and the nature of the premises intruded upon." These factors are interrelated in that the potential for violence increases as the creditor's trespass comes closer to a dwelling,[4] and we will focus our analysis on them. It is necessary to evaluate the facts of each case to determine whether a breach of the peace has occurred. *Walker v. Walthall*, 121 Ariz. 121, 588 P.2d 863, 864 (Ct.App.1978).

We agree with the trial court that the Restatement (Second) of Torts § 198 reasonableness requirement provides appropriate criteria for evaluating whether a creditor's entry has breached the peace. If, as here, there was no confrontation and the timing and manner, including notice or lack of notice, are found reasonable, the entry is privileged. If the jury should find that the manner or timing of this entry was unreasonable because it may have triggered a breach of the peace, it in effect finds the entry a breach of the peace and unprivileged. We foresee the possibility that a rational jury could reach the conclusion that this entry was unreasonable.

As asserted by Salisbury Livestock, one specific inquiry is whether, as discussed in Comment d, § 198, a demand for the property is required. The comment waives the requirement if such demand would be futile, but there must be a determination whether demand would have been futile in these circumstances. Young Salisbury had not responded to Colorado Central's demands for payment, but Salisbury Livestock, on whose property the vehicles were found, was not given an opportunity to deliver the pledged vehicles to Colorado Central or its representatives. Notice is not an express requirement of the statute, but is a common law element which helps to determine the reasonableness of the repossessors' actions. Because we recognize that there was no intent to alter the common law of repossession with W.S. 34–21–962, we believe the Utah Supreme Court's discussion of the § 198 notice requirement in *Mortensen v. LeFevre*, 674 P.2d 134 (1983) is applicable. Although that case did not involve a repossession, it did involve the § 198 "Privileges Arising Irrespective of Any Transaction Between the Parties," which is the situation with repossession from third party property.

Neither of the *Cottam* factors, nor the Restatement reasonableness analysis, requires or suggests that a trespass is necessarily a breach of the peace. Property owners may be entirely unaware of a trespass, so that there is no potential for immediate violence. Likewise, a peaceful, inadvertent trespass on lands remote from any home or improvements is unlikely to provoke violence. Therefore, we do not agree with Salisbury Livestock's contention that

---

3. Wyoming's criminal breach of the peace statute, W.S. 6–6–102(a) (June 1988 Repl.), reads, "[a] person commits breach of the peace if he disturbs the peace of a community or its inhabitants by using threatening, abusive or obscene language or violent actions with knowledge or probable cause to believe he will disturb the peace." Restatement (Second) of Torts § 116 is more useful in arriving at what constitutes a civil breach of the peace: "A breach of the peace is a public offense done by violence, or one causing or likely to cause an immediate disturbance of public order." We note that, although

actual violence is not required to find a breach of the peace, a disturbance or violence must be reasonably likely, and not merely a remote possibility.

4. Decisions elsewhere have established a general rule that a creditor's entry into a residence without permission is a breach of the peace. J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 26–6 (2d ed. 1980).

a trespass without more is a breach of the peace. A trespass breaches the peace only if certain types of premises are invaded, or immediate violence is likely.

■ However, we cannot agree with Colorado Central's assertion that there can be no finding of a breach of the peace because there was no confrontation. Confrontation or violence is not necessary to finding a breach of the peace. The possibility of immediate violence is sufficient. *Thompson v. Ford Motor Credit Company*, 324 F.Supp. 108, 115 (D.S.C.1971); and *Wade v. Ford Motor Credit Company*, 8 Kan.App.2d 737, 668 P.2d 183, 189 (1983). Two elements of this case create questions which we believe might lead reasonable jurors to a conclusion at odds with the trial court's directed verdict. First, this was an entry onto the premises of a third party not privy to the loan agreement. Particularly if there was no knowledge of young Salisbury's consent to repossession, this could trigger a breach of the peace. The few reported cases involving repossession from third party properties suggest that such entry is acceptable. *See, e.g., Thompson*, and *Ford Motor Credit Company v. Ditton*, 52 Ala.App. 555, 295 So.2d 408 (1974). However, these cases do not address third party residential property. When entry onto third party property is coupled with the second unusual element, the location and the setting of this repossession, the possibility of a different verdict becomes more apparent.

We have not located any cases addressing a creditor's entry into the secluded ranchyard of an isolated ranch where the vehicles sought are not even visible from a public place. The few cases involve urban or suburban driveways, urban parking lots, or business premises. *See, e.g., Thompson; Ditton; Oaklawn Bank v. Baldwin*, 289 Ark. 79, 709 S.W.2d 91 (1986); *Ragde v. Peoples Bank*, 53 Wash.App. 173, 767 P.2d 949 (1989). We believe that the location and setting of this entry to repossess is sufficiently distinct, and the privacy expectations of rural residents sufficiently different, that a jury should weigh the reasonableness of this entry, or whether the peace may have been breached by a real possibility of imminent violence, or even by mere entry into these premises: the area next to the residence in a secluded ranchyard.

Because these are factual questions on which reasonable minds may differ, it was error to grant the motion for a directed verdict. The jury must determine whether the peace was breached by this creditor's entry because of the premises entered or the real possibility of immediate violence given the setting and location of the repossession. The reasonableness of the time and manner of the entry must be considered in the context of the third party property status and the rural setting. Whether notice is necessary is also an appropriate consideration when evaluating the manner of repossession. If either time or manner, or both, are found unreasonable then the entry is not privileged.

■ The jury may also consider whether Salisbury Livestock had constructive knowledge of young Salisbury's consent to repossession because of his ownership interest in the corporation and the statements he made concerning his interest on the loan application. If Salisbury Livestock is charged with constructive knowledge of the consent, that knowledge privileges the entry to repossess against a claim of trespass. Consent of the possessor or another authorized to consent is an absolute defense to trespass. *Belluomo v. Kake TV & Radio, Inc.*, 3 Kan.App.2d 461, 596 P.2d 832, 840 (1979) (quoting *Fletcher v. Florida Publishing Company*, 319 So.2d 100, 104 (Fla.App.1975)).

We are sensitive to the usefulness of self-help remedies for secured parties, and recognize that W.S. 34–21–962 authorizes secured parties to proceed by action if self-help will not result in a breach of the peace. However, we must balance this concern with our recognition of society's interest in tranquility, and the right of those not involved with the security agree-

ment to be free from unwanted invasions of their land, which trespass law generally protects against.[5] To achieve an equitable balance where there is conflict, the finder of fact must weigh the particular facts and determine whether the repossession was conducted reasonably.

We need not, and so do not, reach the question of exemplary damages. Any question of damages awaits a prerequisite finding that the repossessors committed an unprivileged trespass.

Reversed and remanded for a new trial.

CARDINE, Chief Justice, dissenting.

I would affirm. The court in this opinion notes that the few reported cases in point would find this entry of directed verdict "acceptable." So would I.

Appellant seeks to recover damage because appellees' agent, while driving on appellant's gravel road, broke a 2 × 4 board. Thereafter, without a breach of the peace, appellees took possession of cars that they were entitled to possess. This they were privileged to do pursuant to W.S. 34–21–962, which provides:

> "In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace * * *."

Undertaking to repossess these cars under the circumstances here existing may have been risky, but that is often the case with repossession by exercise of self help. It is not uncommon for the secured creditor to take possession of property from the debtor or from his presence without judicial process. If taking possession can be accomplished without a breach of the peace, it is entirely lawful.

The secured party in this case, Colorado Central Credit Union, took possession with-

out a breach of the peace. This was lawful, and the judgment should be affirmed.

---

5. *See, e.g.*, W.S. 6–3–303(a) (June 1988 Repl.):
   (a) A person is guilty of criminal trespass if he enters or remains on or in the land or premises of another person, knowing he is not authorized to do so, or after being notified to depart or to not trespass. For purposes of this section, notice is given by:
   (i) Personal communication to the person by the owner or occupant, or his agent, or by a peace officer; or
   (ii) Posting of signs reasonably likely to come to the attention of intruders.